716 F.2d 714
 20 ERC 1011
 UNITED STATES of America, Plaintiff-Appellee,
v.
101.80 ACRES OF LAND, MORE OR LESS, IN IDAHO COUNTY, IDAHO,
Joseph Schwartz and Lorena Rose Schwartz, et al.,
Defendants-Appellants.
UNITED STATES of America, Plaintiff-Appellee,
v.
35.54 ACRES OF LAND, More or Less, In IDAHO COUNTY, IDAHO,
Ora Hazelbaker, a widow, et al., Defendants-Appellants.
 Nos. 82-3044, 82-3046.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 8, 1982.
Decided Sept. 23, 1983.
 
 Jacques B. Gelin, Washington, D.C., for plaintiff-appellee.
 Donald W. Lojek, Parkinson, Lojek, Penland, Boise, Idaho, for defendants-appellants.
 Appeal from the United States District Court for the District of Idaho.
 Before KILKENNY, CHOY, and FLETCHER, Circuit Judges.
 FLETCHER, Circuit Judge:
 
 
 1
 These consolidated appeals are taken from two condemnation proceedings in which the compensation eventually awarded to the condemnee for an easement taken by the government far exceeded the amount originally deposited with the court by the United States. The district court denied each condemnee recovery of costs, attorney fees, and expenses against the United States under 28 U.S.C. Sec. 2412 (Supp. IV 1980), as amended by the Equal Access to Justice Act (the Act), on the ground that the landowner in a condemnation proceeding can never be a "prevailing party" as required by the statute.[1] 92 F.R.D. 774 (D.Idaho 1982). We have jurisdiction under 28 U.S.C. Sec. 1291 (1976) and reverse.
 
 
 2
 * The appellants in these consolidated cases are owners of land situated on the banks of the Middle Fork of the Clearwater River in Idaho County, Idaho. Recognizing the beauty of the area, Congress in 1968 designated the drainage basin of the Middle Fork of the Clearwater River as part of the national wild and scenic rivers system established under the Wild and Scenic Rivers Act, 16 U.S.C. Secs. 1271-1287 (1976 and Supp. IV 1980). See id. Sec. 1274(a)(1). Pursuant to the designation, various Federal agencies, including the Department of Agriculture, which administers the Forest Service, were authorized to condemn easement interests to effectuate the purposes of the Wild and Scenic Rivers System.
 
 
 3
 Accordingly, on March 24, 1978, the United States, on behalf of the Secretary of Agriculture, filed a declaration of taking in the district court of Idaho, declaring that a scenic easement against Tract 50(a), consisting of 35.54 acres and owned by Ora Hazelbaker and other persons, was "thereby taken for the use of the United States." The government also deposited with the court $12,162.92 to the use of the persons entitled thereto, in the amount of estimated just compensation stated in the declaration of taking.[2]
 
 
 4
 Upon the filing of the declaration and the making of the deposit, title to the easement interest specified in the declaration immediately vested in the United States and the interest was "deemed to be condemned and taken for the use of the United States." 40 U.S.C. Sec. 258a (1976); see United States v. Dow, 357 U.S. 17, 23, 78 S.Ct. 1039, 1045, 2 L.Ed.2d 1109 (1958); United States v. Hayes, 172 F.2d 677, 679 (9th Cir.1949). At the same time, "the right to just compensation" for the taken interest vested "in the persons entitled thereto." 40 U.S.C. Sec. 258a (1976). On the same day it filed the declaration of taking and made the deposit of estimated compensation, the United States filed a document styled as a "complaint" demanding "judgment that the property be condemned." The complaint further requested that "just compensation for taking be ascertained and awarded" and "such other relief as may be lawful and proper."
 
 
 5
 On January 15, 1980, the owners[3] of Tract 50(a) answered, admitting the statutory authority for taking the easement and its "public use" and denying only "that the amount tendered by the Government is adequate or reasonable compensation for the property." The Hazelbaker case proceeded to trial on November 24, 1981. The jury returned a special verdict finding as just compensation for the taking of the scenic easement in Tract 50(a) the sum of $22,500. Judgment on the verdict was entered on December 1, 1981.
 
 
 6
 In similar fashion, on May 12, 1980, the government filed a declaration of taking of a scenic easement against Tract 810, consisting of 101.80 acres, owned by Joseph and Lorena Schwartz and others, and deposited $40,000 as just compensation.[4] After trial, the jury returned a verdict in the amount of $144,600 for the easement taken. Judgment was entered in the Schwartz matter on December 1, 1981.
 
 
 7
 In early December of 1981, the landowners in both Hazelbaker and Schwartz filed timely motions to amend judgment to include an award of costs and attorney fees and expenses, as provided under the Act, in the total amount of $14,045.00 and $40,370.59, respectively.[5] On January 6, 1982, the district court denied the application for fees in Schwartz on the basis that a landowner cannot be a prevailing party in a condemnation suit for purposes of an award under the Act. 92 F.R.D. 774, 777 (D.Idaho 1982). The court stated that, "[p]ractically speaking, a reasonable person would be hard pressed to hold that the defendant landowners had not prevailed at the trial on the amount to be awarded." Id. at 776. It concluded, however, that prior case law "den[ied] a landowner the status of a 'prevailing party' in a condemnation suit." Id. Nevertheless, based on testimony of the government's own witness that just compensation was in excess of $40,000 and the court's finding that $40,000 was "substantially less" than just compensation for the easement taken, the court "specifically" found that "the position of the government was not substantially justified" and that "no special circumstances which would make an award of costs, expenses and attorneys' fees unjust" existed. Id. at 776 n. 1. On January 7, 1982, the district court denied an award in Hazelbaker on similar grounds, making similar findings on the lack of substantial justification for the government's position and the non-existence of special circumstances. Both groups of landowners timely appealed.
 
 II
 
 8
 The landowners contend that the district court erred in concluding that a landowner can never be a prevailing party, under section 2412, as amended by the Act, in a condemnation proceeding in which the validity of the condemnation is upheld. The government argues that a condemnee cannot properly be considered a prevailing party in the sense of section 2412 in such a proceeding because (a) the government is sustained in "taking" the property interest it wanted and (b) even if a landowner otherwise would be a prevailing party under section 2412, the saving provision to the Act prevents an award of fees and expenses to a condemnee. We reject both of the government's arguments. We hold that, under the circumstances of these cases, the landowners are the prevailing parties. We further hold that, since the district court correctly found that the position of the government was not substantially justified, the landowners are entitled to costs, fees, and expenses under section 2412 as amended by the Act.
 
 
 9
 * Section 2412(a) permits the trial court to award costs to "the prevailing party in any civil action brought by or against the United States." 28 U.S.C. Sec. 2412(a) (Supp. IV 1980). Section 2412(d)(1)(A) requires the trial court to award attorney fees and expenses to "a prevailing party other than the United States ... in any civil action ... brought by or against the United States," when certain conditions obtain. Id. Sec. 2412(d)(1)(A).[6] Although both the landowners and the government concede that a condemnation proceeding is a "civil action" in the sense of section 2412, they disagree over whether a landowner in a condemnation proceeding can be a prevailing party where the property is taken.
 
 
 10
 The defendant-condemnees assert that a landowner in a condemnation proceeding in which the government's ability to take is upheld should, under certain circumstances, be considered a prevailing party under section 2412. They contend that, even though a condemnation proceeding may be initiated by the government and brought to adjudication pursuant to the government's "complaint" seeking a judgment of condemnation and the ascertainment of just compensation, the government is not the prevailing party in any given proceeding simply because, as requested, the government's right to condemn is confirmed and just compensation is awarded. They argue that unless the landowner hires an attorney and secures witnesses in order to contest the size of the deposit, he can hardly expect to receive an award larger than the deposited sum. Thus, where the government makes a deposit but the deposit is inadequate, the landowner must litigate to secure the payment of just compensation guaranteed by the Constitution. They assert that the mere circumstance that the government has requested the court to give "lawful and proper" relief (and has thereby placed the landowner in a defensive posture) rather than let the landowner himself initiate the litigation cannot obscure the fact that it is the landowner, and not the government, who "prevails" when the landowner is awarded more than the deposit he would have received had he not litigated the issue at all. The landowners thus conclude that, even apart from the issue of the government's ability to take, upon which issue either the government or the landowner may prevail, the landowner can prevail on the just compensation issue, even where the government makes a deposit, depending on whether the sum eventually awarded exceeds the original deposit.
 
 
 11
 By contrast, the government asserts that a condemnee can never be a prevailing party under section 2412 in a condemnation proceeding where the validity of the taking is upheld. It argues that, regardless of the size of the deficiency between the just compensation originally deposited and that which is finally awarded, the government both gets the land and has the amount of just compensation decided, as the government had requested, and thus the government must be considered to have prevailed for all intents and purposes.
 
 
 12
 Under the facts of the two cases before us, the contrast between the two alternative notions of applying the term "prevailing party" to the condemnation proceeding is squarely presented. The landowners in both cases litigated only the just compensation issue, and the original just compensation deposits in Schwartz and Hazelbaker were only 28 and 54 percent, respectively, of the amounts eventually awarded. Thus, were we to adopt the landowners' approach, the landowners would be prevailing parties under section 2412 for purposes of all costs, fees, and expenses incurred in the condemnation proceedings. By contrast, were we to choose the approach proposed by the government, the government would be the prevailing party in both of these actions, despite the clear inadequacy of the original deposits and the lack of litigation over the government's ability to take, since the government's authority to take was clearly upheld.
 
 
 13
 The language of section 2412 does not tell us explicitly how Congress intended the term "prevailing party" to be applied in the setting of the condemnation proceeding. Nor does any precedent from our Circuit or the Supreme Court address in this context the scope of the term "prevailing party" under section 2412 as amended by the Act.[7] We turn therefore to the legislative history of the Act and to the prior case law interpreting the term "prevailing party" under other fee and cost statutes, to discern which approach is more consistent with the policies underlying the Act. We conclude, as has the Fifth Circuit, that the defendants have the sounder position. See United States v. 329.73 Acres of Land, 704 F.2d 800 (5th Cir.1983) (en banc).
 
 
 14
 Both the general policies underlying the Act, as expressed in the reports and hearings on the Act, and specific references in its history support treating a condemnee who receives substantially more than the original deposit as a prevailing party.
 
 
 15
 The Act itself and the legislative debates on the various bills that culminated in the Act[8] express a Congressional intent that the term "prevailing party" should embrace a landowner who is successful through litigation in securing increased compensation from a penurious government that takes his property but offers inadequate compensation. The Act itself states that its purpose is "to diminish the deterrent effect of seeking review of, or defending against, governmental action by providing in specified situations an award of attorney fees, expert witness fees, and other costs against the United States." Pub.L. No. 96-481, Sec. 202(c), 94 Stat. 2321, 2325 (codified at 5 U.S.C. Sec. 504 note (Supp. IV 1980)). Congress explicitly found that "certain individuals" experienced this deterrent effect "because of the expense involved in securing the vindication of their rights." Id. Sec. 202(a) (codified at 5 U.S.C. Sec. 504 note (Supp. IV 1980)). Likewise, the debate in the House and Senate unambiguously expresses the fundamental purpose of the Act--to prevent private individuals from being deterred from challenging government action because of the threat of high litigation expenses.[9]
 
 
 16
 The legislative history nowhere indicates that Congress considered the deterrent effect of litigation expenses in condemnation proceedings to be any less than that experienced in civil actions in general. Nor does the history of the Act demonstrate that Congress intended the Act to combat the problem any less forcefully in condemnation proceedings where the deposit is inadequate than in other civil actions. Indeed, from the individual's standpoint, few actions of government are more drastic than the taking of one's property. Preventing fear of the cost of litigation from deterring redress of inadequate compensation for a governmental taking is a policy within the clear intendment of the statute.
 
 
 17
 Specific references throughout the Congressional hearings on the bills that culminated in the Act indicate that the legislators intended the Act to remedy the plight of condemnees faced with potential litigation costs comprising a large portion of the difference between the value of the condemned estate and the government's deposit. Senator DeConcini, a co-sponsor of the bill enacted as the Act, for example, thought that the lack of pre-Act authorization for recovery of litigation expenses from the government in condemnation cases was one of the specific problems that would be corrected by the bill. Equal Access to Justice Act of 1979: Hearings on S. 265 Before the Subcom. on Improvements in Judicial Machinery of the Senate Comm. on the Judiciary, 96th Cong., 1st Sess. 34 (1979) (statement of Subcom. Chairman DeConcini) (landowner who challenges condemnation in court, "even if [he] win[s], is not going to get a fair market price for [the] land by the time [he] get[s] through with [his] costs," since pre-Act law "does not provide for costs of litigation or appeal" in successful condemnation cases) [hereinafter cited as S. 265 Hearings ]. Moreover, several persons appearing at the Congressional hearings on the Act, including members of the Department of Justice, either directly or impliedly indicated that the bill would encompass condemnation cases and hence that a condemnee would in some cases be a prevailing party under the Act.[10] Significantly, none of the legislators hearing this testimony contradicted these witnesses by telling them on the record that a landowner could not be a prevailing party under section 2412 as amended.
 
 
 18
 It is also significant that the reports accompanying the various bills culminating in the Act specifically mention tort cases as excluded from the Act yet never refer to condemnation cases as excluded from the Act. See, e.g., H.R.Rep. No. 1418, 96th Cong., 2d Sess. 18, 22 (1979), reprinted in 1980 U.S.Code Cong. & Ad.News 4984, 4997, 5001. Similarly, the cost estimate of the Act, prepared by the Congressional Budget Office and "accept[ed]" as accurate by the House Committee on the Judiciary, see H.R.Rep. No. 1418, 96th Cong., 2d Sess. 20, 21-24, reprinted in 1980 U.S.Code Cong. & Ad.News 4984, 4999-5003, specifically acknowledged the exclusion of tort cases from coverage under the Act in its calculations. The estimate nonetheless makes neither mention of nor allowance for the effectual exclusion of condemnation cases from the Act under the Government's interpretation of the term "prevailing party," even though, as the government concedes, condemnation cases currently constitute a full three percent of all civil cases involving the United States.[11]
 
 
 19
 The government argues that, despite the general indications in the legislative history that Congress intended condemnees like those before us to be considered prevailing parties under section 2412 as amended, Congress expected the term "prevailing party" in the Act to be interpreted consistently with the case law of "existing fee-shifting statutes." See S.Rep. No. 253, 96th Cong., 1st Sess. 7 (1979); H.R.Rep. No. 1418, 96th Cong., 2d Sess. 11, reprinted in 1980 U.S.Code Cong. & Ad.News 4984, 4990. The government asserts that in previous cases interpreting the prior version of section 2412 (permitting an award of costs--but not fees or expenses--in government suits), the government was always considered the only possible prevailing party in a condemnation proceeding.
 
 
 20
 We find this argument unconvincing. The legislative reports neither require nor suggest that we construe the term "prevailing party" under the new section 2412 in the same way earlier courts had interpreted the term in applying the prior version of section 2412 to condemnation cases.
 
 
 21
 First, the legislative reports accompanying the Act all refer specifically to "fee"shifting statutes. Consequently, it appears that the legislators either did not want the scope of the term "prevailing party" under the new section 2412 to be determined by reference to a purely "cost"-shifting statute like the prior version of section 2412 or, in any event, did not have the prior version of section 2412 in mind when they set forth their intentions with regard to the scope of the term "prevailing party" in the various reports. Absent a clearer indication that Congress meant "cost"-shifting when it said "fee"-shifting, we are reluctant to deny to the landowners before us a recovery under section 2412 as amended simply because in earlier cases similarly situated landowners were denied recovery under a statute pertaining purely to costs and making no provision for an award of fees whatsoever.[12]
 
 
 22
 Second, the language of the legislative reports, when considered not in the abstract but in the context of the reports themselves, indicates that when the committee stated that the meaning of the term "prevailing party" was to be determined by reference to existing case law, it actually meant to ensure that the term "prevailing party" would not be construed in the narrow fashion the government now urges upon us. Rather, Congress intended the term to be applied broadly, as it had been in various pre-Act cases outside the area of condemnation cases, such as in the civil rights area, to cover a party who may not have been a victor by final judgment but nonetheless "prevailed" sufficiently to deserve to recover fees. For example, the House Report that accompanied S. 265, from which the Act derived, states:
 
 
 23
 Under existing fee-shifting statutes, the definition of prevailing party has been the subject of litigation. It is the committee's intention that the interpretation of the term in S. 265 be consistent with the law that has developed under existing statutes. Thus, the phrase "prevailing party" should not be limited to a victor only after entry of a final judgment following a full trial on the merits. A party may be deemed prevailing if he obtains a favorable settlement of his case, Foster v. Boorstin, 561 F.2d 340 (D.C.Cir.1977); if the plaintiff has sought a voluntary dismissal of a groundless complaint, Corcoran v. Columbia Broadcasting System, Inc., 121 F.2d 575 (9th Cir.1941); or even if he does not ultimately prevail on all issues, Bradley v. School Board of the City of Richmond, 416 U.S. 696 [94 S.Ct. 2006, 40 L.Ed.2d 476] (1974).
 
 
 24
 In cases that are litigated to conclusion, a party may be deemed "prevailing" for purposes of a fee award in a civil action prior to the losing party having exhausted its final appeal. A fee award may thus be appropriate here the party has prevailed on an interim order which was central to the case, Parker v. Matthews, 411 F.Supp. 1059, 1064 (D.D.C.1976), or where an interlocutory appeal is "sufficiently significant and discrete to be treated as a separate unit," Van Hoomissen v. Xerox Corp., 503 F.2d 1131, 1133 (9th Cir.1974).
 
 
 25
 H.R.Rep. No. 1418, 96th Cong., 2d Sess. 11, reprinted in 1980 U.S.Code Cong. & Ad.News 4984, 4990 (footnote omitted). Significantly, all of the cited examples of case law appropriate for reference in fleshing out the meaning of the term "prevailing party" involve parties claiming to be prevailing parties who were treated as prevailing parties despite a lack of a complete legal victory in a literal sense. In none of the cases is the term "prevailing party" read not to include a party seeking to be treated as one. We are convinced that Congress did not intend that we be bound by earlier cases interpreting the prior version of section 2412.[13]
 
 
 26
 We conclude that the legislative history of the Act evinces a Congressional intent that a condemnee who, like the landowners before us, secures a just compensation award substantially greater than the original deposit, is to be considered a prevailing party under section 2412 as amended by the Act. Given the indications in the legislative history that the term "prevailing party" was to encompass a landowner securing a compensation award substantially greater than the government's deposit, we nonetheless have examined the prior federal cases interpreting the term as applied in the context of the condemnation proceeding under other cost and fee statutes for such illumination as they might bring to our present inquiry. We find them in large part inapposite.
 
 
 27
 Prior to the amendment of section 2412 by the Act, courts uniformly construed the term "prevailing party" under the predecessor of section 2412, which permitted an award of costs against the government in civil actions, to exclude the landowner. See United States v. Bodcaw, 440 U.S. 202, 203 n. 3, 99 S.Ct. 1066, 1067 n. 3, 59 L.Ed.2d 257 (1979) (per curiam);[14] United States v. 2,186.63 Acres of Land, 464 F.2d 676, 678 (10th Cir.1972); United States ex rel. T.V.A. v. An Easement and Right-of-Way Containing 0.1 Acres, More or Less, 452 F.2d 729, 730-31 (6th Cir.1971).[15] In each of these cases, however, where the court gave any reasoned basis for its decision at all, the court concluded that a landowner could not be a prevailing party under the old section 2412 for reasons that are not persuasive in our interpretation of section 2412 as amended by the Act.[16]
 
 
 28
 By contrast to these cases, which conclude that a condemnee cannot be a prevailing party under the prior version of section 2412,[17] the Third Circuit recently determined that a condemnee receiving substantially more than the condemnor originally offered and deposited is a prevailing party under a common law rule of the Virgin Islands which awards costs to a prevailing party and a Virgin Islands statute which awards attorneys fees to a prevailing party. Virgin Islands v. 19.623 Acres of Land, 602 F.2d 1130, 1136 (3d Cir.1979). In a reasoned consideration of the unique situation posed by a condemnation action, the court held:
 
 
 29
 [T]he determination of which party, if any, should fairly be regarded as prevailing may be a difficult problem in a condemnation case and may well depend upon the particular facts and circumstances as well as the issue actually litigated. Thus, if the issue is the government's right to take the property as was the case in an earlier stage of this proceeding and the government is successful in establishing that right, the government could well be regarded as the prevailing party. See 1 Nichols' Law of Eminent Domain p. 4-132 (1976). But when, as here, the issue is the amount of just compensation to which the condemnee is entitled and where, as here also, the amount actually awarded by the court exceeds very substantially the amount of the government's original offer and deposit, it would seem not unreasonable to hold that the condemnee would be the prevailing party .... We conclude, accordingly, that it would not be unreasonable for the court in this case to hold that the appellant here is the prevailing party to whom costs against the government may be awarded.
 
 
 30
 Id. at 1135-36. Based on sound policy considerations rather than merely maxims of statutory construction, this case is strong precedent for treating a landowner receiving an award of compensation substantially in excess of the original deposit as a prevailing party under section 2412, at least where the issue of the government's ability to take is not seriously litigated.
 
 
 31
 We conclude that to read the term prevailing party to exclude absolutely all condemnees would be to frustrate--rather than to fulfill--the Congressional intent underlying the Act. The legislative history is replete with suggestions that condemnees are in some cases to be treated as prevailing parties. Moreover, there is no indication that Congress intended to define the term "prevailing party" by reference to the majority view espoused in the federal cost and fee statute cases decided prior to the Act. Indeed, most of the pre-Act cases are devoid of any careful analysis of how the concept of "prevailing party" is best to be applied to the condemnation proceeding. The one case that does consider the theoretical dimensions of the problem supports recovery in this case.[18]
 
 
 32
 For these reasons, we hold that the landowners are prevailing parties under section 2412 as amended since the government's ability to take was not actively litigated and the awards of just compensation substantially exceeded the amounts deposited by the government.[19] See United States v. 329.73 Acres of Land, 704 F.2d 800, 809 (5th Cir.1983) (en banc) (awarding fees and costs to prevailing condemnee under Sec. 2412 as amended).
 
 B
 
 33
 The United States further contends, all other arguments aside, that the saving clause of the Act prevents recovery here. Existing statutory authority provides for an award of fees in certain very limited types of condemnation cases. The government contends that, because of the saving clause, even a landowner who is a prevailing party under section 2412(d) as amended must look solely to the existing statutory authority for a recovery of fees. We reject the argument.
 
 The saving provision to the Act states:
 
 34
 Nothing in section 2412(d) of title 28, United States Code [subsec. (d) of this section], as added by section 204(a) of this title, alters, modifies, repeals, invalidates, or supersedes any other provision of Federal law which authorizes an award of such fees and other expenses to any party other than the United States that prevails in any civil action brought by or against the United States.
 
 
 35
 Act, Pub.L. No. 96-481, Sec. 206, 94 Stat. 2321, 2330 (codified at 28 U.S.C. Sec. 2412 note (Supp. IV 1980)). The United States urges that this proviso prevents the application of section 2412(d) to condemnation cases, since 42 U.S.C. Sec. 4654(a) already provides for the recovery of attorney fees in certain condemnation cases.[20] Extending recovery fees to additional condemnation cases under section 2412(d) would thus "modify" or "supersede" section 4654(a).[21]
 
 
 36
 Like the Fifth Circuit, however, we find it more reasonable to interpret the saving provision simply to prevent the imposition of the section 2412(d) requirements[22] on parties seeking attorney fees under section 4654(a) or other fee recovery statutes existing prior to the Act. See United States v. 329.73 Acres of Land, 704 F.2d 800, 806-07 (5th Cir.1983) (en banc). This interpretation is consistent with the express policy underlying the Act--to diminish the deterrent effect of probable litigation fees on potential challenges to government action. Moreover, it ensures that the new standards for recovery of fees established under the Act do not defeat recovery under other statutes.[23]
 
 III
 
 37
 Although we conclude that a landowner who receives an award of just compensation substantially in excess of the sum the government originally deposited with the registry of the court is a prevailing party under subsections (a) and (d) of section 2412 as amended by the Act, it by no means follows that any such landowner is automatically entitled to costs, fees, and expenses under that provision. Section 2412(a) leaves the awarding of costs against the government to the discretion of the district court. Rule 71A(l ), by making the ordinarily mandatory award of costs to prevailing parties described in Rule 54(b) inapplicable to condemnation cases, preserves that discretion. See 28 U.S.C. Sec. 2412(a) (Supp. IV 1980); Fed.R.Civ.P. 71A(l ). Moreover, section 2412(d) provides that a district court must award attorneys fees and expenses only where the position of the government was not "substantially justified" and where "special circumstances" that would "make an award unjust" do not exist. 28 U.S.C. Sec. 2412(d)(1)(A) (Supp. IV 1980).
 
 
 38
 In both of the cases before us, the district court specifically found that "the position of the government was not substantially justified and that there exist no special circumstances which would make an award of costs, expenses and attorneys' fee unjust." Thus, having decided that the district court erred in finding that the landowners in these two cases were not prevailing parties, we are presented with the question whether the court abused its discretion in deciding that, but for its conclusion that prior law prevented consideration of the landowners as prevailing parties, the landowners were entitled to litigation expenses under section 2412.[24]
 
 
 39
 Under the facts of these cases, we conclude that the district court did not abuse its discretion in deciding that costs should be awarded to the landowners. While the awarding of costs to condemnees is within the discretion of the trial court, see 28 U.S.C. Sec. 2412(a) (Supp. IV 1980), we believe that costs should ordinarily be awarded to landowners in condemnation cases where, as here, the taking issue is not actively litigated yet the landowner receives a substantially greater award of just compensation than the amount originally deposited. This is the ordinary rule in all forms of civil litigation, see Fed.R.Civ.P. 54(d) (costs "shall be allowed as of course to the prevailing party unless the court otherwise directs"), and we see no reason for a different rule here.
 
 
 40
 Similarly, we conclude that the district court did not abuse its discretion in finding a lack of substantial justification for the government's position and a lack of special circumstances that would make an award of fees and expenses unjust. "The test for whether the government's position is substantially justified is essentially one of reasonableness." Hoang Ha v. Schweiker, 707 F.2d 1104, 1106 (9th Cir.1983). The district court's award of fees under this test will not be reversed unless the district court abused its discretion. Id. at 1105. In each of the cases before us, the government's original deposit was wholly inadequate, representing only a fraction of the true value of the easement condemned as found by the jury. Under such circumstances, we cannot say the district court abused its discretion in concluding that the government's position was not "substantially justified" and that no special equities prevent an award of fees and expenses to the landowners.[25]
 
 IV
 
 41
 We hold that the condemnees in these cases were prevailing parties under section 2412 as amended by the Act.[26] We sustain the district court's findings that the government's position was not substantially justified and that no special circumstances exist making an award of fees and expenses unjust. The case is remanded with instructions to modify the judgments to award costs, fees, and expenses as provided in section 2412.
 
 
 42
 REVERSED in part, AFFIRMED in part, and REMANDED.
 
 
 
 [1]
 Section 2412, as amended by the Act, Pub.L. No. 96-481, Title II, 94 Stat. 2321, 2325, 2327 (1980) (effective October 1, 1981), provides in pertinent part:
 (a) Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title, but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought by or against the United States or any agency and any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. A judgment for costs when taxed against the United States shall, in an amount established by statute, court rule, or order, be limited to reimbursing in whole or in part the prevailing party for the costs incurred by such party in the litigation....
 (d)(1)(A) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.
 (B) A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified.
 (C) The court, in its discretion, may reduce the amount to be awarded pursuant to this subsection, or deny an award, to the extent that the prevailing party during the course of the proceedings engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy.
 (2) For the purposes of this subsection--
 (A) "fees and other expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees ...;
 (B) "party" means (i) an individual whose net worth did not exceed $1,000,000 at the time the civil action was filed, (ii) a sole owner of an unincorporated business, or a partnership, corporation, association, or organization whose net worth did not exceed $5,000,000 at the time the civil action was filed .... or (iii) a sole owner of an unincorporated business, or a partnership, corporation, association, or organization, having not more than 500 employees at the time the civil action was filed; and
 (C) "United States" includes any agency and any official of the United States acting in his or her official capacity.
 28 U.S.C. Sec. 2412 (Supp. IV 1980).
 From 1966 until the enactment of the Equal Access to Justice Act in 1980, Sec. 2412 simply provided that a district court had the discretion to award costs to a prevailing party in suits by or against the United States. See 80 Stat. 309 (1966). During that period, costs were uniformly denied to condemnees on the ground that a landowner could not be a prevailing party in a condemnation proceeding. See infra note 15 and accompanying text.
 Prior to its amendment in 1966, Sec. 2412 stated that the United States could be held liable for costs "only when such liability is expressly provided for by Act of Congress." See Act of June 25, 1948, ch. 646, Sec. 2412, 62 Stat. 869, 973 (amended 1966). Hence, in condemnation cases arising prior to 1966, costs were uniformly denied to condemnees on the ground that no independent statutory authorization existed for an award of costs in condemnation proceedings. See, e.g., United States ex rel. and for the Use of TVA v. Pressnell, 328 F.2d 580 (6th Cir.1965); U.S. ex rel. for Use of TVA v. Easement & Right of Way Over Certain Land in Smith County, Tennessee, 214 F.Supp. 29 (D.Tenn.1959). See generally 10 C. Wright, A. Miller & M. Kane, Federal Practice & Procedure Sec. 2674, at 256-57 n. 6 (2d ed. 1983).
 
 
 [2]
 The declaration of taking in Hazelbaker was originally filed against a tract comprising 35.54 acres, and a deposit made in the amount of $16,940. Prior to trial on the issue of just compensation, the condemned tract was reduced to 25.54 acres and the deposit accordingly decreased to $12,162.92
 
 
 [3]
 Prior to the filing of the answer, Ora Hazelbaker represented to the court that she had no interest in Tract 50(a) and secured a dismissal of the cause against her, leaving the other named landowners as defendants
 
 
 [4]
 Unlike the defendants in Hazelbaker, the Schwartz landowners in their answer not only asserted the insufficiency of the amount of compensation deposited but also denied the validity of the taking. The government does not challenge, however, the district court's findings that "[t]he litigation did not present the issue of the government's right to take the easement" and that "[t]he entire dispute involved what sum should be paid to the landowners to fairly compensate them for the interest in their property taken one and one half years earlier by way of an order of this court." See 92 F.R.D. at 775
 
 
 [5]
 The just compensation awards themselves did not include an award of the landowners' costs, attorney fees, and expenses incurred in seeking a fair determination of just compensation since such amounts are not considered part of the "just compensation" required by the fifth amendment. United States v. Bodcaw Co., 440 U.S. 202, 203, 99 S.Ct. 1066, 59 L.Ed.2d 257 (1979); Dohany v. Rogers, 281 U.S. 362, 368, 50 S.Ct. 299, 302, 74 L.Ed. 904 (1930); Richmond Elks Hall Ass'n v. Richmond Dev. Agency, 561 F.2d 1327, 1333 (9th Cir.1977). While the Constitution does not require the government to reimburse the landowner's litigation expenses, the Court has not interpreted the Constitution to prevent Congress from permitting a condemnee to recover costs, fees, and expenses. See Bodcaw, 440 U.S. at 204, 99 S.Ct. at 1067 (compensation for litigation expenses is "a matter of legislative grace rather than constitutional command"); Fed.R.Civ.P. 71A(l ) advisory committee note of 1948 (award of costs to landowner is "a matter for legislation and not court rule")
 
 
 [6]
 Section 2412(b) further authorizes the award of fees and expenses against the government under any statutory or common law exceptions to the American rule. This provision is inapplicable here, since there is no indication of any governmental bad faith or similar circumstances falling within the existing equitable exceptions to the American rule. Cf. United States v. Lee, 360 F.2d 449, 452 (5th Cir.1966) (upholding as part of compensation award the owner's expenses in having a survey made of taken land where government misrepresented amount of land to be taken)
 
 
 [7]
 The Supreme Court's recent expression of approval of the standard adopted by the First Circuit for determining whether a plaintiff is a "prevailing party" under 42 U.S.C. Sec. 1988 is not of assistance in this case. See Hensley v. Eckerhart, --- U.S. ----, ----, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40, 51 U.S.L.W. 4552, 4554 (1983) (citing Nadeau v. Helgemoe, 581 F.2d 275 (1st Cir.1978) as "typical formulation" of threshold determination of prevailing party status). Although "the standards" set forth in Hensley "are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party,' " --- U.S. at ---- n. 7, 103 S.Ct. at 1939 n. 7, the Nadeau test by its terms applies only to "plaintiffs" seeking treatment as prevailing parties and turns on whether "plaintiffs succeed on any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit," see 581 F.2d at 278-279
 
 
 [8]
 Predecessors of the Equal Access to Justice Act were discussed in the Senate and House as early as the 93d and 94th Congresses. See H.R.Rep. No. 1418, 96th Cong., 2d Sess. 6, reprinted in 1980 U.S.Code Cong. & Ad.News 4984, 4984-85 (discussing history of attorney fees legislation). During the 95th Congress, bills were introduced and hearings held in both houses. See, e.g., S. 2354, 95th Cong., 1st Sess., 123 Cong.Rec. 39,116-19; H.R. 13,717, 95th Cong., 2d Sess., 124 Cong.Rec. 24,014 (1978). No consensus was then reached because of doubts about the need for and concern over the costs of the legislation. See H.R.Rep. No. 1418, 96th Cong., 2d Sess. 6, reprinted in 1980 U.S.Code Cong. & Ad.News 4984, 4985
 The Act was reintroduced in the 96th Congress on January 31, 1979, with a requirement conditioning the recovery of fees on the government's position not being substantially justified. See S. 265, 96th Cong., 1st Sess. 125 Cong.Rec. 1404, 1436-42 (1979). The Senate Committee on the Judiciary reported the bill with amendments, see S.Rep. No. 253, 96th Cong., 1st Sess. (1979), and the Senate then passed the bill by a vote of 94 to 3 on July 31, 1979, 125 Cong.Rec. 21,445 (1979). The House Committee on the Judiciary favorably reported S. 265, in amended form, on September 26, 1980. See H.R.Rep. No. 1418, 96th Cong., 2d Sess. 1, reprinted in 1980 U.S.Code Cong. & Ad.News 4984. The Senate incorporated S. 265 into H.R. 5612, 96th Cong., 2d Sess. (1980), by adding S. 265 to H.R. 5612 as Title II of H.R. 5612. 126 Cong.Rec. S13,685-91 (daily ed. Sept. 26, 1980). Both the House, 126 Cong.Rec. H10,231 (daily ed. Oct. 1, 1980), and the Senate, 126 Cong.Rec. S14,215 (daily ed. Oct. 1, 1980), approved H.R. 5612, as amended, on October 1, 1980.
 
 
 [9]
 See, e.g., 125 Cong.Rec. 21,435 (statement of Sen. DeConcini), 21,441-42 (Sen. McClure) (1979); 126 Cong.Rec. H10,222 (statement of Rep. Fenwick), H10,226 (Rep. Smith), H10,230 (Rep. Schulze), H10,231 (Rep. Railsback) (daily ed. Oct. 1, 1980); 126 Cong.Rec. S13,876 (statement of Sen. Weicker), S13,876 (Sen. Thurmond) (daily ed. Sept. 30, 1980)
 
 
 [10]
 Award of Attorneys' Fees Against the Federal Government: Hearings on S. 265 Before the Subcommittee on Courts, Civil Liberties, and the Administration of Justice of the House Committee on the Judiciary, 96th Cong., 2d Sess. 508 (letter of Oct. 17, 1979 by Asst. Att'y Gen. Parker to Comm. Chmn. Rodino) ("S. 265 sweeps with a broad brush, requiring the Government to pay attorney fees in virtually every case that it loses" and "would apply in ... land condemnation suits") [hereinafter cited as House Hearings ]; S. 265 Hearings, supra, at 32-34, 37, 179-82 (statement of E. Bundrick, rancher) (discussing large size of attorneys' fees required to challenge government's valuation of condemned property); id. at 50-51 (statement of Deputy Asst. Att'y Gen. Calamaro) ("the impact of awards of attorney fees under the S. 265 approach would affect all areas of Government business--from enforcement of civil rights to land condemnation"); id. at 51-52 (statement of Deputy Asst. Att'y Gen. Calamaro) (budget estimate for S. 265 should include the special costs of "expert witness fees and [of] analyses, studies, tests and reports" incurred by landowners who prevail in "land condemnation cases" where government's position is not substantially justified); id. at 55-56 (testimony of Prof. W.R. King) (stating, in response to Sen. DeConcini's question regarding scope of the bill, that bill would, "as a practical matter," have "a Governmentwide type of application" sweeping in, among other matters, several thousand "land condemnation cases every year" handled by the Land and Natural Resources Division); see also Equal Access to Courts: Hearings on S. 2354 Before the Subcom. on Improvements in Judicial Machinery of the Senate Comm. on the Judiciary, 95th Cong., 2d Sess. 34-35 (testimony & statement of Dept. Asst. Att'y Gen. Nejelski) (examining the fee and cost award potential of "land condemnation cases") [hereinafter cited as S. 2354 Hearings ]; cf. House Hearings, supra, at 38, 40 (statement of Asst. Att'y Gen. Daniel) (S. 265 "would exclude only tort cases; otherwise, regardless of the subject matter of the case," the bill would apply)
 
 
 [11]
 The statement of a law professor that is appended to one of the committee reports, suggesting that eminent domain proceedings "deserve special treatment outside the framework of a general rule suitable for civil actions in general" and proposing that, where the award of just compensation is within 20 percent of the government's offer, fees be awarded only if the owner had offered to accept an award that is within 20 percent of the eventual award, see S. 2354 Hearings, supra note 11, at 101, does not suggest a contrary conclusion. Rather, the fact that, despite these suggestions, the Act neither contains any unique provision concerning condemnation proceedings nor establishes any special exclusion of condemnation proceedings from the reach of the Act is persuasive evidence that Congress wanted private persons prevailing on the issue of just compensation to be considered the same as any other litigants who prevail in disputes with the federal government
 
 
 [12]
 The only strictly "fee"-shifting statute applicable to federal condemnation cases of which we are aware, Sec. 304(a) of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, Pub.L. No. 91-646, Sec. 304(a), 84 Stat. 1894, 1906 (codified at 42 U.S.C. Sec. 4654(a) (1976)), makes an award of costs and fees contingent on such factors as the government's abandoning of the condemnation, and not the landowner's status as prevailing party. Hence, the cases interpreting the application of Sec. 4654(a) to condemnation proceedings are not useful to us in construing Sec. 2412, whose applicability does explicitly turn on the condemnee's status as a prevailing party
 
 
 [13]
 We do not ignore either assurances given in the legislative reports that the term "prevailing party" would be interpreted consistently with existing "fee"-shifting statutes or the "substantial reenactment" canon of statutory construction (where words in an amended section of a statute have been previously construed under a pre-amendment statute containing the same words, the words are ordinarily to be construed in the new statute in the same way as in the prior construction). Saxbe v. Bustos, 419 U.S. 65, 74, 95 S.Ct. 272, 278, 42 L.Ed.2d 231 (1974); Commissioner v. Noel's Estate, 380 U.S. 678, 682, 85 S.Ct. 1238, 1240, 14 L.Ed.2d 159 (1965); 1A C. Sands, Sutherland's Statutes and Statutory Construction, Sec. 22.33, at 191-92 (4th ed. 1972). Understandably, the Government urges that since the term "prevailing party" in the old version of Sec. 2412 was interpreted not to include a condemnee, the same term must be so interpreted in the present Sec. 2412(a) and Sec. 2412(d)(1)(A). But we must reject the argument
 First, although there may be validity to the principle in the abstract, in instances where Congress has revisited a statute and left the prior practice untouched, see Saxbe, 419 U.S. at 74, 95 S.Ct. at 278, here the legislative history indicates that Congress did "touch" the statute and intended to change the construction of the term "prevailing party" as applied to condemnees. Congress specifically intended that some condemnees would be prevailing parties under Sec. 2412 as amended. The canon does not require us to assume that Congress always will use new words in a statute whenever it wishes to alter a previous construction of the statute. Rather, it simply provides that where Congress has nowhere indicated an intention that words in a new statute are to have a meaning different from the construction given the words in a prior statute, the courts are to assume that the old construction is to carry forward under the new statute.
 Furthermore, unlike Bustos and Noel's Estate, where the previous construction given to the statutory language was respectively a "longstanding administrative construction" embodied in a 47-year old immigration rule, 419 U.S. at 73-74, 95 S.Ct. at 278, or part of a "settled and consistent administrative practice" incorporated in Treasury regulations that remained "unchanged" for 39 years, 380 U.S. at 680-81, the first judicial construction of the term "prevailing party" under Sec. 2412 took place a mere decade before the enactment of the Act and was never incorporated in any administrative regulation or rule. In Bustos and in Noel's Estate, the age of the construction and its widespread dissemination through incorporation in regulations supported an inference that Congress knew of the previous interpretation and meant the new statute to be interpreted identically. Here, by contrast, the relative rarity and youth of the judicial interpretations under the prior version of Sec. 2412 do not support such an implication.
 
 
 [14]
 The Supreme Court in Bodcaw did not discuss its reasons for holding that a condemnee cannot be a "prevailing" party under the previous version of Sec. 2412. The holding, contained in a single brief sentence in a footnote, simply cites as authority the interpretation given to Federal Rule of Civil Procedure 71A(l ) in two prior circuit cases. See 440 U.S. at 203-04 n. 3, 99 S.Ct. at 1067 n. 3
 
 
 [15]
 See also United States ex rel. T.V.A. v. 109 Acres of Land, 404 F.Supp. 1392, 1393 (E.D.Tenn.1975); United States v. 23.94 Acres of Land, More or Less, 325 F.Supp. 330, 331-32 (W.D.Va.1970); cf. United States v. 87.30 Acres of Land, More or Less, 430 F.2d 1130, 1134 (9th Cir.1970) (finding "no authority for the allowance of costs," without mentioning or addressing the possible applicability of Sec. 2412)
 
 
 [16]
 First, several courts reasoned that a condemnee was not intended to be covered by the prior version of Sec. 2412 because the legislative history to the old Sec. 2412 indicated that the statute was designed merely to ensure symmetry in the recovery of costs. Because the fifth amendment prevents the government from recovering costs against a condemnee, see generally Grand River Dam Authority v. Jarvis, 124 F.2d 914, 916 (10th Cir.1942) (government's recovery of costs against a condemnee would diminish the landowner's award of just compensation in violation of the fifth amendment), the cases reason, neither should the condemnee receive costs against the government. 2,186.63 Acres, 464 F.2d at 678; An Easement, 452 F.2d at 730; 23.94 Acres, 325 F.Supp. at 331. Whether or not this is an accurate reading of the legislative history of the prior version of Sec. 2412, the purpose of the new Sec. 2412 is entirely different. The Act was intended affirmatively to eliminate the deterrent effect of litigation costs on private parties seeking redress from improper action. Indeed, "symmetry" was antithetical to its purpose. Pub.L. No. 96-481, Sec. 202(b), 94 Stat. 2321, 2325 (codified at 5 U.S.C. Sec. 504 note (Supp. IV 1980)) ("because of the greater resources and expertise of the United States the standard for award against the United States should be different from the standard governing an award against a private litigant" in cases covered by the Act); see 125 Cong.Rec. 21,435 (statement of Sen. DeConcini) ("the purpose of the bill is ... to affirmatively encourage citizens to challenge actions which they believe to be unreasonable or irresponsible") (1979)
 Second, some courts found Sec. 304(a) of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, Pub.L. No. 91-646, Sec. 304(a), 84 Stat. 1894, 1906 (codified at 42 U.S.C. Sec. 4654(a) (1976)), see infra note 22, that provides for a mandatory award of litigation expenses to condemnees in proceedings where the government's ability to take is denied or where condemnation is abandoned, helpful in interpreting the prior version of Sec. 2412. These courts reasoned that the enactment of Sec. 4654(a) subsequent to the enactment of the former version of Sec. 2412 indicated that the Congress that enacted the old Sec. 2412 did not intend condemnees to recover under that provision. 2,186.63 Acres, 464 F.2d at 678; An Easement, 452 F.2d at 730-31; 23.94 Acres, 325 F.Supp. at 332. This reasoning is flawed. The existence of Sec. 4654(a) is in fact entirely consistent with the allowance of costs under the prior version of Sec. 2412. Section 4654(a) makes recovery of costs mandatory in certain cases, whereas in the former version of Sec. 2412 it was discretionary. Even more importantly, Sec. 4654(a) permits the recovery of costs, fees, and expenses whereas the prior version of Sec. 2412 covered only costs.
 Finally, the prior cases that conclude that a condemnee cannot be a prevailing party under the former version of Sec. 2412 rely on the Supreme Court's failure to amend Federal Rule of Civil Procedure 71A(l ) after the amendment of Sec. 2412 in 1966, which amendment for the first time permitted the awarding of costs against the United States. See supra note 1. Rule 71A(l ) then, as now, stated that in condemnation proceedings, "[c]osts are not subject to Rule 54(d)," which provides that costs shall be allowed "as of course" to the prevailing party. Fed.R.Civ.P. 71(A)(l ), 54(c). The cases reason that if the term "prevailing party" in the old Sec. 2412 were meant to include condemnees, the Court would have eliminated Rule 71A(l ), so that Rule 54(d) would apply to condemnation cases. 2,186.63 Acres, 464 F.2d at 678; An Easement, 452 F.2d at 731. We do not find this reasoning useful in determining the scope of the term "prevailing" party under Sec. 2412 as amended for two reasons. First, it purports to discern actual Congressional intent from the Supreme Court's failure to act. Moreover, it ignores the very strong possibility that the Court may not have eliminated Rule 71A(l ) simply because, even after the 1966 enactment of the prior version of Sec. 2412 (and costs had thus become available to private parties litigating against the government), the Court nonetheless wished to make sure that the United States, when it prevailed, was not to recover costs against the landowner under Rule 54(d), for such a recovery would violate the fifth amendment.
 
 
 [17]
 The Supreme Court also considered the application of the term "prevailing party" to the condemnation proceeding in its construction of Federal Rule of Civil Procedure 54(d), which requires an award of costs as of course to the prevailing party in a federal civil action. In 1951, the Court adopted Rule 71A(1 ), which makes Rule 54(d) inapplicable in condemnation cases. Fed.R.Civ.P. 71A(l ). The Court apparently expected Rule 71A(l ) to prevent the command of Rule 54(d) from requiring the taxing of costs against the condemnee in favor of the Government, which the Court thought would usually be the prevailing party in condemnation cases. Fed.R.Civ.P. 71A(l ) advisory committee note of 1948 (stating that Rule 71A(l ) was intended to protect a condemnee, "[s]ince the condemnor will normally be the prevailing party and he should not recover his costs against the property owner")
 The advisory committee of 1948 did not say and thus the Supreme Court, by adopting Rule 71A(l ), did not find, however, that a condemnee could not be the prevailing party. Indeed, whether a landowner (as opposed to the government) could be a prevailing party in a condemnation proceeding was not even an issue in 1948, when the advisory note was drafted. At that time, Sec. 2412 permitted the taxing of costs against the United States in any proceeding only to the extent provided under other independent statutory authorization and no independent authority for taxing costs against the United States then existed. Hence, the committee refused to comment on whether a property owner's costs should be taxed against the United States since that issue was thought a "matter for legislation and not for court rule." Id. Now that legislation does specifically provide in general for an award of costs (and fees and expenses) against the United States, we do not find the Court's rather ambiguous interpretation of the term "prevailing party" under Rule 54(d) (as revealed by its drafting of Rule 71A(l )), in a context where no statute even arguably allowed an award of costs against the government, to be either dispositive or useful.
 
 
 [18]
 We recognize, of course, that permitting the awarding of costs, fees, and expenses against the United States is premised on a waiver of sovereign immunity which cannot be implied. United States v. Mitchell, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980); United States v. Worley, 281 U.S. 339, 344, 50 S.Ct. 291, 293, 74 L.Ed. 887 (1930). We are convinced nonetheless that permitting recovery of costs, fees, and expenses by a landowner who receives a just compensation award greater than the sum originally deposited by the government and who never substantially disputed the government's ability to take is fully within the intent of Congress in enacting the Act and in thereby amending Sec. 2412
 
 
 [19]
 There is no contention in this case that the government refused to settle prior to the district court's determination of just compensation for a sum equal to the government's deposit. In cases where the government's original settlement offer is lower than the deposit, however, that offered sum, and not the deposit, would be the criterion upon which a landowner would base his litigation decision. Hence, where the government refuses to settle with the landowner without trial for a sum equal to the deposit, the question whether the condemnee was the prevailing party would depend on whether the final award was in excess of the government's original settlement offer
 
 
 [20]
 42 U.S.C. Sec. 4654(a) (1976) provides in full:
 (a) The Federal court having jurisdiction of a proceeding instituted by a Federal agency to acquire real property by condemnation shall award the owner of any right, or title to, or interest in, such real property such sum as will in the opinion of the court reimburse such owner for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of the condemnation proceeding, if--
 (1) the final judgment is that the Federal agency cannot acquire the real property by condemnation; or
 (2) the proceeding is abandoned by the United States.
 
 
 [21]
 Citing Radzanower v. Touche Ross & Co., 426 U.S. 148, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976), the government makes a similar argument based upon the general rule of statutory construction that a more general statute should not be interpreted to encompass an area already covered by a special statute. Whatever validity this principle may have in the abstract, it is inapplicable here
 As Radzanower itself makes clear the principle is properly applied only to prevent a later general statute governing a situation from "controll[ing]" or "nullif[ying]" an earlier specific statute governing the same situation. See Radzanower, 426 U.S. at 153, 158, 96 S.Ct. at 1992, 1995 (narrow venue provision of National Bank Act held not eclipsed by later act; proper venue for bank litigation remained governed by old Act). Our interpretation of Sec. 2412 in no way nullifies or controls the operation of Sec. 4654(a). Section 4654(a) itself governs only a limited subcategory of condemnation proceedings, viz., those in which the condemnation is abandoned or unsuccessful. It does not cover the sort of case presented here where the government neither abandoned the condemnation proceedings nor failed to prevail on the ability to take issue but did fail to prevail on the just compensation issue. Hence, this case simply does not present the question, to which the Radzanower principle properly pertains, whether a condemnee in an abandoned or unsuccessful condemnation action could recover fees and costs under Sec. 4654(a) without complying with the requirements imposed under Sec. 2412.
 
 
 [22]
 See, e.g., 28 U.S.C. Sec. 2412(d)(2)(B)(i) (Supp. IV 1980) ("individual" seeking recovery must have net worth less than $1,000,000); id. Sec. 2412(d)(1)(B) (application for fees award must be filed within 30 days of final judgment); id. Sec. 2412(d)(2)(A) (attorney fees recoverable not to exceed $75 per hour)
 
 
 [23]
 This interpretation of the saving provision is also supported by the legislative reports accompanying the Act. The report on the House bill states that Sec. 2412(d)(1)(A) is "not intended ... to alter the standards " of "any existing fee-shifting statutes" and is intended to apply only to cases ... where fee awards against the government are not already authorized." H.R.Rep. No. 1418, 96th Cong., 2d Sess. 18 (emphasis added), reprinted in 1980 U.S.Code & Cong.Ad.News 4984, 4997; see also S.Rep. No. 253, 96th Cong., 1st Sess. 23 (1979) (Act "shall not supercede or alter existing statutory authority for fee awards against the government" (emphasis added))
 
 
 [24]
 The landowners argue that the government is foreclosed from challenging these findings of the district court because it failed to cross-appeal from the district court's decision. See Stella v. DePaul Community Health Center, Inc., 642 F.2d 258, 261 (8th Cir.1981). Appellants are mistaken, since the government, as appellee, is entitled to urge on appeal, without taking a cross-appeal, any matter on the record to support the judgment rendered below. United States v. American Railway Express Co., 265 U.S. 425, 435, 44 S.Ct. 560, 563, 68 L.Ed. 1087 (1924)
 
 
 [25]
 That the jury determining the value of the taken estate may on occasion split the difference between the appraisals of the government and the landowners does not constitute a special circumstance inherent in condemnation proceedings which makes an award of fees and expenses under Sec. 2412 in condemnation cases "unjust." Nor does that possibility substantially justify a low government deposit
 The government itself concedes that the size of the deposit required under 40 U.S.C. Sec. 258a (1976) is not evidence admissible to prove the value of the taken property interest. See Evans v. United States, 326 F.2d 827, 829-30 (8th Cir.1964). Hence, even assuming that the government is not compelled by law to make an initial deposit that is the government's best estimate of the actual value of the taken estate, see United States v. Cobb, 328 F.2d 115, 117 (9th Cir.1964), the government's desire to receive a fair valuation at trial does not preclude an initial deposit in the amount of the government's best estimate of the real value of the land. The government in any event remains free to produce at trial witnesses appraising at amounts lower than the deposit, where an array of appraisals exists.
 
 
 [26]
 While we construe Sec. 2412(a) to permit an award of costs to a landowner who prevails in a condemnation proceeding, we do not interpret that section to authorize an award of costs to the government when it prevails. To do so could result in the diminishing of a landowner's just compensation guaranteed by the fifth amendment. See generally Grand River Dam Authority v. Jarvis, 124 F.2d 914, 916 (10th Cir.1942)