Peggy J. MATTHEWS,
Plaintiff-Appellant,

v.

The UNITED STATES of America, et al., Defendants-Appellees.

No. 82–8111.

United States Court of Appeals,
Eleventh Circuit.

Aug. 29, 1983.

Willard & Rushing, H. Bruce Jackson, David Louis Hill, Atlanta, Ga., for plaintiff-appellant.

Bernard E. Namie, Asst. U.S. Atty., Martin W. Matzen and Edward J. Shawaker, U.S. Dept. of Justice, Washington, D.C., for United States.

Erwin, Epting, Gibson & McLeon, Eugene A. Epting, Athens, Ga., for Harbor Light, Sidney L. Moore and Warren A. Moore.

John F. Manning, Stepp & Manning, Decatur, Ga., for all others.

Before FAY, HENDERSON and HATCHETT, Circuit Judges.

HATCHETT, Circuit Judge:

We here review (1) the district court's refusal to grant an injunction requiring the United States Army Corps of Engineers to remove a boat dock and enforce the applicable regulations regarding discharge of sewage into a lake; (2) the district court's refusal to enforce an implied restrictive covenant in favor of a lakeside property

owner, and (3) denial of an award of attorney's fees against the United States pursuant to 28 U.S.C.A. § 2412. We affirm in part and reverse in part.

## FACTS

Peggy J. Matthews brought this action to challenge the United States Army Corps of Engineer's (Corps) authorization of the placement and operation of a condominium-styled boat dock as part of a commercial marina on Lake Hartwell in Hart County, Georgia. Matthews alleges that the location of the boat dock adjacent to her property causes a diminution in the value of her property and obstructs her view of the cove on which her property is located.

The United States owns Lake Hartwell, and it is under the administration of the Corps of Engineers. In 1965, the Corps executed a thirty-year commercial concession lease to Tugaloo Development Corp. for fourteen acres of Lake Hartwell shoreline, referred to as "collar lands." Tugaloo Development Corp. assigned this lease to Harbor Light Marina, Inc. (Harbor Light). The lease specifically authorizes Harbor Light

> to furnish facilities and provide and maintain docks for privately-owned boats, to service and care for privately-owned boats, to sell gasoline and oil, and to rent boats and transport passengers for hire, all for the benefit of the boating public. Defendants, Warren and Sidney Moore, are officers, directors, shareholders, and managers of Harbor Light Marina, Inc.

*Matthews v. United States,* 526 F.Supp. 993, 995–96 (M.D.Ga.1981).

The main Harbor Light Marina complex is comprised of six large docks containing multiple boat slips. Except for dock D–1, boat slips are available to the public on a Corps of Engineers approved rental basis. Until December, 1978, when Dock F was constructed, Warren Moore and the other Dock F slip owners rented boat slips in the main marina complex.

In late 1976, several of the Dock F slip owners submitted a proposal to Warren Moore regarding the construction of a boat dock. The dock under the proposal would be constructed in the area leased to Harbor Light Marina and would be financed, owned, and maintained by private individuals rather than by Harbor Light Marina. The eleven interested individuals formed a "Dock F Association" which included Warren Moore. The proposed location of Dock F was three-quarters of a mile around the shoreline from the main marina complex and adjacent to Matthews's lake house. In November, 1977, the Corps approved Dock F's location, construction, and operation on a condominium basis with the eleven individuals in the Dock F Association as owners. The Dock F Association purchased a parcel of private property from Harbor Light Marina adjacent to the proposed location of the dock, designated Lot C, for use as a parking lot.

In April, 1978, construction of Dock F began and was substantially completed by June of 1978. Permanent fixtures for telephone and electric lines were completed in January, 1979. The eleven individuals owning boat slips in Dock F paid the total cost of Dock F, approximately $20,000. Each individual owner was additionally required to pay $50.00 into an escrow account for the maintenance and repair of the dock and for utilities. Approximately $2,000, ten percent of these amounts, was paid to Harbor Light Marina which reported this amount as income from boat slip rental. Of that ten percent, three percent, or about $600, was paid to the United States under the lease; thus, the total profit to Harbor Light Marina was approximately $1,500. *Matthews,* 526 F.Supp. at 996.

Under the terms of the commercial concession lease, Harbor Light Marina was authorized to construct docking facilities. Therefore, as a matter of formality, Harbor Light Marina issued bills of sale for the boat slips in Dock F to the eleven individual owners. The district court found that the

> bills of sale purport to pass title to the eleven individual defendants, and provide that Harbor Light is authorized to expend funds from the escrow account as may be necessary for repairs on Dock F

and to pay insurance and utilities bills 'if and only when' the individual owners failed to do so. The bills of sale further provided that the sale of Dock F is made subject to the terms of the commercial concession lease.

526 F.Supp. at 996. The district court also found that, although Harbor Light Marina was ultimately responsible for ensuring that owners of Dock F did not violate the terms of the lease, "in reality, Harbor Light Marina, Inc., has had little, if any, involvement in the planning, construction, operation, or supervision of Dock F." 526 F.Supp. at 996. Lot C was paved for use as a parking lot and provides access across public "collar lands" to Dock F. The district court found that at least two of the parking spaces constructed for Lot C extend onto public "collar lands." The only public access to Dock F is by boat, or by walking along the public shoreline. "Private property," or signs containing similar messages, were posted on or around Dock F until protests by Corps officials caused their removal. Dock F is used exclusively by the eleven individual defendants or their invitees. The court found that no public services or facilities such as boat ramps, restrooms, food, fuel pumps, or other such services are associated with Dock F. 526 F.Supp. at 997.

After Matthews purchased her lot in 1974, the Corps required Matthews and Harbor Light Marina to remove a private dock in the vicinity of the present location of Dock F. Matthews used that dock as her personal dock. The reason the Corps gave "for requiring removal of the dock ... was that the dock was located in an area reserved for public use and had not been approved by the Corps." 526 F.Supp. at 998.

In 1976, when Warren Moore spoke to her regarding the possibility of a dock being built in the area near her property, Matthews objected. Matthews was not given any further notice by Moore, the Corps, or any of the individual owners of the proposed construction of Dock F. In either late June or early July, 1978, Matthews first saw the dock. At that time, construction of the main structure of the dock was substantially completed. Matthews hired a lawyer who notified the Corps of her objections to the dock. From July, 1978, through November, 1979, the lawyer attempted to resolve the matter with the Corps. After unsuccessfully seeking to resolve the matter through public officials, on March 6, 1980, Matthews filed the present action.

## DISTRICT COURT HOLDINGS

The district court held that, under Georgia law, it was unable to find the existence of an implied restrictive covenant limiting Lot C to residential use. Based on the United States Environmental Protection Agency's classification of Lake Hartwell, and the Corps' regulations, the court found that the discharge of sewage from boats berthed at Dock F was not unlawful. Consequently, the court refused to grant an injunction prohibiting discharge of treated effluent from the boats berthed at Dock F. Matthews prevailed on the issue of the location of Dock F. The court held that by permitting the construction and operation of Dock F, a private dock, in the public recreation area leased to Harbor Light Marina, the Corps abused its discretion. Despite the fact that Matthews prevailed on this issue, the court refused to grant an injunction requiring the removal of Dock F from its present location. The district court also refused to award Matthews attorney's fees against the United States under the Equal Access to Justice Act, 28 U.S.C.A. § 2412(d)(1)(A).

## BREACH OF RESTRICTIVE COVENANT

In a pendent state claim, Matthews alleged that the individual defendants, Harbor Light Marina, Sidney Moore, and Warren Moore, breached a restrictive covenant applicable to Lot C by permitting it to be used as a parking lot. Matthews argues that the district court is erroneous in finding that there is no implied restrictive covenant limiting Lot C to residential use because no specific plans, plots, or general

scheme of residential development were ever prepared for the property.

■ The district court's findings of fact will not be set aside unless they are clearly erroneous. Fed.R.Civ.P. 52(a). The clearly erroneous standard of review applies to both subsidiary and ultimate facts. *American Civil Liberties Union of Georgia v. Rabun County, etc.,* 698 F.2d 1098, 1110 (11th Cir.1983). The district court's findings on this issue are not clearly erroneous.

## REMOVAL OF DOCK F

The district court found that Dock F is a private dock, not a public commercial concession dock as contemplated by the lease between Harbor Light and the United States. The court further found that the Corps abused its discretion in violation of the applicable regulations governing management of Lake Hartwell when it approved the construction, placement, and operation of Dock F as a private dock. Although the district court held Matthews to be the prevailing party on this issue, it refused to grant her requested relief, the removal of Dock F. Instead, the district court ordered that ownership of Dock F be transferred from the eleven individuals to Harbor Light Marina to be operated as a public commercial dock. Under the district court's order, as an alternative to actually repurchasing Dock F, Harbor Light Marina may permit any or all of the eleven individuals who now use Dock F to continue to occupy boat slips in Dock F on a rental basis. The amount already paid by the individuals would be credited as rent payments.

Matthews asserts three grounds for reversal of the district court's denial of an injunction requiring the removal of Dock F. First, Matthews asserts that the court failed to provide her with any remedy for the harm she suffers. Second, Matthews contends that an injunction requiring the removal of Dock F should be granted because there exists no adequate remedy at law. Third, the transfer of ownership of Dock F from the individuals to Harbor Light Marina does not in fact convert the dock from a private dock to one for public use. This is especially true, she says, in light of the provision in the district court's order allowing the individual owners of Dock F to retain use of the dock.

■ We agree with Matthews that an injunction requiring the removal of Dock F from its present location is the appropriate remedy. The transfer of ownership to Harbor Light Marina grants Matthews, the prevailing party, no substantial remedy. Further, transfer of ownership will not realistically render Dock F, which consists of only eleven slips for boats, a dock for public use as required by the commercial concession lease and the regulations applicable to Lake Hartwell.

The district court recognized that Matthews suffers two types of damages, monetary and personal. The fair market value of Matthews's property is reduced by about $7,000 due to the location of Dock F. The district court reasoned that an adequate remedy at law, inverse condemnation under 28 U.S.C.A. § 1346(a)(2), is available to compensate her for her monetary damages. Regarding the destruction of the aesthetic value and enjoyment of her property caused by the dock's interference with the view from Matthews's property, for which there is no adequate remedy at law, the district court balanced the equities of the parties. It concluded that the hardship to the Dock F owners and the Corps if they were required to remove the dock outweighs the hardship Matthews suffers.

The Supreme Court, in *United States v. SCRAP,* specifically recognized that " 'aesthetic and environmental well-being, like economic well-being are important ingredients of the quality of life in our society ....' " 412 U.S. 669, 686, 93 S.Ct. 2405, 2415, 37 L.Ed.2d 254, 269 (1973), *quoting Sierra v. Morton,* 405 U.S. 727 at 734, 92 S.Ct. 1361 at 1366, 31 L.Ed.2d 636 at 643 (1972). Evidence indicates that the relocation of Dock F, which is not a permanent structure, and construction of new electrical connections "could run as high as $7,500." *Matthews,* 562 F.Supp. at 1006. Bearing in

mind that the location and operation of Dock F is in violation of the applicable regulations, we find that Matthews's right to the view from her property weighs more heavily than the hardships caused by requiring removal of the dock. The district court abused its discretion in refusing to grant an injunction requiring the removal of Dock F. *SEC v. Carriba Air, Inc.,* 681 F.2d 1318, 1322 (11th Cir.1982).

Having decided that an injunction should be granted requiring the removal of Dock F, we need not reach the issue regarding unlawful discharge of sewage from boats berthed at Dock F.

## ATTORNEY'S FEES

The district court refused to grant an award of attorney's fees against the United States under the Equal Access to Justice Act, 28 U.S.C.A. § 2412, as amended October 21, 1980, Pub.L.No. 96–481, § 204(a)(1), 94 Stat. 2327 (1983). Matthews argues that, as the prevailing party, she is entitled to an award of attorney's fees "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C.A. § 2412(d)(1)(A). Title 28 U.S.C.A. § 2412(d)(1)(A) provides:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

█ The district court gave two grounds for denying an award of attorney's fees under section 2412(d)(1)(A). First, the court concluded that an award of attorney's fees against the Corps was not warranted under the facts of this case because it was "substantially justified" in law and fact in defending against Matthews's action regarding the restrictive covenant and discharge of sewage. Further, the court found that "although the Corps of Engineers was obstinate in refusing to concede that Dock F is in all essential respects a private dock and improperly located in a public recreation area, the Corps of Engineers did have reasons for approving Dock F and did in good faith and on clearly reasonable grounds oppose removal of Dock F to another location." *Matthews,* 526 F.Supp. at 1009. Second, although the court recognized that the Equal Access to Justice Act, as amended October 21, 1980, is applicable to cases pending on October 1, 1981, the court noted that this case was ready to be decided as early as February 23, 1981, and that the majority of the district court's opinion was prepared prior to October 1, 1981. Therefore, if the court had not been delayed it would have entered its decision before October 1, 1981, and Matthews would not have been entitled to an award of attorney's fees against the United States.

We reject the district court's reasoning that because it was delayed in entering its order, Matthews is precluded from receiving an award of attorney's fees. Section 2412(d)(1)(A) applies to cases which were pending on October 1, 1981. Pub.L. No. 96–481, § 208. It is irrelevant that the reason this case was still pending on October 1, 1981, was the court's delay in entering its decision.

█ Therefore, the question of the propriety of an award of attorney's fees turns on the question of whether the United States was "substantially justified" in defending its position or whether special circumstances exist such that an award of attorney's fees would be unjust. 28 U.S.C.A. § 2412(d)(1)(A). We note that our role in reviewing the district court's denial of an award under the Equal Access to Justice Act is such that we should modify the district court's denial only if failure to make the award is an abuse of discretion. *Knights of the KKK v. East Baton Rouge,*

679 F.2d 64, 68–69 (5th Cir. Unit A 1982).[1] The test for whether government action was "substantially justified" is one of reasonableness. 679 F.2d at 68.

In making its determination regarding whether Dock F is a public or private dock, the district court held that permitting the construction and operation of Dock F as a private dock in the public recreation area was an abuse of discretion on the part of the Corps. The court's finding of abuse of discretion is based on the fact that the applicable acts and regulations specifically indicate that water resource development projects, such as Lake Hartwell, are to be operated as public facilities.[2] Based on the fact that the mandate of these provisions is clear, the district court held that the ownership and utilization of a private dock in the public recreation area of Lake Hartwell is a *per se* violation of the applicable regulations.

■ Against the background of these regulations, we hold that the United States's position in defending against removal of Dock F was not reasonable; consequently, it was not "substantially justified." We further note that prior to the construction of Dock F, the Corps required Matthews and Harbor Light Marina to remove a private dock in the vicinity of Dock F's present location. The reason given by the Corps for requiring removal of the dock was that it was in an area reserved for use by the public and had not been approved by the Corps.

Section 2412(d) provides that the district court "shall award" expenses to the prevailing party unless the court finds the position of the United States substantially justified. We hold that it was an abuse of the district court's discretion to deny Matthews, the prevailing party on the issue of the ownership and utilization of Dock F, an award of attorney's fees. We do, however, agree with the district court that the United States's position regarding the discharge of sewage was "substantially justified" in law and fact.

■ Neither the Eleventh nor the Fifth Circuit has considered a situation, such as this, in which a plaintiff prevails in some but not all of its claims against the United States. We adopt the approach of the Third Circuit. Because neither the terms of the Equal Access to Justice Act nor its legislative history addresses the situation where a plaintiff prevails in some but not all of its claims, the court in *Goldhaber v. Foley,* looked to the underlying purpose of the Equal Access to Justice Act. *Goldhaber v. Foley,* 698 F.2d 193, 197 (3d Cir.1983). The governing principle of the Act is that the "United States should pay those ex-

1. Decisions rendered after October 1, 1981, by Unit A panels of the former Fifth Circuit, although not binding precedent are persuasive in the Eleventh Circuit. *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982).

2. Title 16 U.S.C.A. § 460d (1974), under which the Chief of Engineers is authorized to operate public recreational facilities such as Lake Hartwell, provides, in pertinent part, that:

The water areas of all such projects shall be opened to public use generally for boating, swimming, bathing, fishing, and other recreational purposes, and ready access to and exit from such areas along the shores of such projects shall be maintained for general public use . . . .

Title 36 C.F.R. § 327.30(d)(1) (1982), regarding lakeshore management at government owned lakes, provides, in pertinent part:

*Policy.* (1) It is the policy of the Chief of Engineers to manage and protect the shorelines of all lakes under its jurisdiction to . . .

promote the safe and healthful use of these shorelines for recreational purposes by all of the American people . . . . It is the objective of Corps to manage private exclusive use of public property to the degree necessary to gain maximum benefits to the general public. Title 36 C.F.R. § 327.30(e)(4)(ii) (1982), regarding public recreation areas, such as the shoreline where Dock F is located, provides:

PUBLIC RECREATION AREAS. On shorelines within or proximate to designated or developed recreation areas, *private floating recreation facilities are not permitted.* [Emphasis added.]

Appendix F to the Lakeshore Management Plan further provides with respect to Public Recreation Areas:

In general, this zoning includes public owned land along the shoreline where private use and facilities are prohibited. We desire to prevent conflict of private use with general public use.

penses which are incurred when the government presses unreasonable positions during litigation." 698 F.2d at 197. The central purpose of the Act is "to eliminate any barrier to litigation challenging unreasonable government conduct presented by the specter of attorney's fees .... Because the Equal Access to Justice Act contemplates deterring only unreasonable government positions," it would contravene the purposes of the Act to require the government to bear the expense of defending even its reasonable positions. 698 F.2d at 197. Following the Third Circuit, we adopt the position that the United States is only responsible for "that portion of the expenses attributable to its unjustified positions." 698 F.2d at 197. Consequently, Matthews is entitled to attorney's fees allocable to the claim upon which she prevailed.

## CONCLUSION

Accordingly, we affirm the district court's order on the issue of the restrictive covenant. We reverse that portion of the court's order which denies Matthews's prayer for an injunction requiring removal of Dock F from its present location. Regarding the award of attorney's fees against the United States under section 2412(d)(1)(A), we affirm in part and reverse in part, and remand to the district court with directions to award Matthews attorney's fees incurred in support of her claim regarding the location of Dock F.

AFFIRMED IN PART, REVERSED IN PART and REMANDED FOR FURTHER PROCEEDINGS.