**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**640.00 ACRES OF LAND, MORE OR LESS, IN the COUNTY OF DADE, STATE OF FLORIDA; and Virginia Land Company, and Unknown Owners, et al., Defendants-Appellants.**

**No. 82–5510.**

United States Court of Appeals,
Eleventh Circuit.

April 3, 1985.

Johnson, Circuit Judge, filed dissenting opinion.

Kimbrell, Hamann, Jennings, Womack, Carlson & Kniskern, P.A., Thomas B. Bourque, Carl K. Hoffmann, Miami, Fla., for defendants-appellants.

Jacques B. Gelin, Robert L. Klarquist, Attys., App. Sec. Lands Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before GODBOLD, Chief Judge, JOHNSON and CLARK, Circuit Judges.

CLARK, Circuit Judge:

This is an appeal from a denial of attorneys' fees in a condemnation proceeding. The issues are whether the Equal Access to Justice Act (EAJA)[1] permits a landowner to recover attorneys' fees in condemnation cases and, if so, whether the landowner in this case is nevertheless not entitled to an award because the government's position was "substantially justified" or because

---

**1.** Pub.L. 96–481, 94 Stat. 2325, *amending* 28 U.S.C. § 2412, 80 Stat. 308.

the case was not pending on October 1, 1981, the Act's effective date. In resolving these questions, we bear in mind the findings and purpose of the Act:

Sec. 202.(a) The Congress finds that certain individuals, partnerships, corporations, and labor and other organizations may be deterred from seeking review of, or defending against, unreasonable governmental action because of the expense involved in securing the vindication of their rights in civil actions and in administrative proceedings.

(b) The Congress further finds that because of the greater resources and expertise of the United States the standard for an award of fees against the United States should be different from the standard governing an award against a private litigant, in certain situations.

(c) It is the purpose of this title—

(1) to diminish the deterrent effect of seeking review of, or defending against, governmental action by providing in specified situations an award of attorney fees, expert witness fees, and other costs against the United States; and

(2) to insure the applicability in actions by or against the United States of the common law and statutory exceptions to the 'American rule' respecting the award of attorney fees.

94 Stat. 2325 (1980).

## I.

### A.

Of the various methods of condemnation available to the federal government,[2] two are most common. The more expeditious of these two methods is that prescribed by the Declaration of Taking Act, 40 U.S.C. § 258a. Under this statute, the government obtains immediate title to the land upon the filing of a declaration of taking and the deposit into the court registry of the estimated just compensation. If just compensation as judicially determined is found to be greater than the deposit, the government must deposit the difference, with interest on the difference from the date of possession. The more frequently invoked method, however, is the so-called "straight condemnation" method, prescribed by 40 U.S.C. § 257. Under this statute, the government simply files a complaint in condemnation. Title does not pass at that time and no money is deposited into the court. Once the complaint is filed, the matter proceeds to trial to determine the amount of compensation due the landowner. Upon resolution of the compensation issue, the government has the option of either purchasing the property at the adjudicated price or dismissing the condemnation action. *See* Fed.R.Civ.P. 71A(i)(3).

### B.

This appeal involves the "straight condemnation" method. On October 11, 1974, Congress authorized and established the Big Cypress National Preserve by enactment of Pub.L. No. 93–440, 88 Stat. 1255, and the government became committed to the project on that date. The Park Service, on March 20, 1978, obtained an appraisal of the subject property in the amount of $240,000 ($375 per acre). By letter dated April 11, 1978, the agency made an offer in the amount of the appraisal to the landowner. By letter dated June 13, 1978, the landowner rejected the offer, and made no counteroffer.

Because the negotiations had proven unsatisfactory, the United States initiated "straight condemnation" proceedings by filing a complaint in condemnation on behalf of the Park Service on November 27, 1978. The valuation trial was set before a commission appointed pursuant to Rule 71A(h), Fed.R.Civ.P., on March 9, 1981. On November 20, 1980, the government requested an updated appraisal by its contract appraiser for purposes of trial, since in "straight" condemnation proceedings value is fixed as of the date of trial. The

---

**2.** The Supreme Court in *Kirby Forest Indus. v. United States,* ―― U.S. ――, ――, 104 S.Ct. 2187, 2190–91, 81 L.Ed.2d 1, 6–7 (1984), identified four distinct methods.

government received an appraisal in the amount of $256,000 ($400 per acre) on January 16, 1981.

The only issue at trial before the U.S. Land Commission was the amount of just compensation to be paid by the United States to the defendants-landowners. The government, based on its updated appraisal, presented testimony of $256,000 ($400 per acre) (C.R. 221–23). The landowner presented testimony ranging from $448,000 ($700 per acre) to $640,000 ($1,000 per acre) (R. 218, 220, 221). (See summary of Commission's Report, R. 227.) The commission, in reviewing the evidence, declared (R. 229):

> In conclusion, the Commission believes that the Government expert witness has placed values on the subject property that are too low to reflect present market value and has failed to recognize the time increase value which has been established by the testimony. On the other hand, the Commission feels that the defendants' experts have overvalued the subject property based on sales of land not truly comparable and because of the inherent difficulty in making the necessary adjustments.

The commission made an award of $368,000 ($575 per acre).

No party filed objections to the commission's report. On May 29, 1981, the district court entered judgment for $368,000 without interest. On October 21, 1981, the court amended the judgment pursuant to a stipulation negotiated between appellees and the government by issuing an order awarding interest from May 29, 1981, until the date of deposit of monies in registry.

On October 29, 1981, defendants moved the district court to award attorneys' fees, costs and litigation expenses pursuant to the EAJA, 28 U.S.C. § 2412(d). On March 10, 1982, the United States deposited $368,-000 plus $28,935 in interest pursuant to the order for just compensation as of October 21, 1981. On March 22, 1982, the district court denied the motion for attorneys' fees holding the Act not to apply to land condemnation cases. This appeal followed.

## II.

The government's threshold argument is that the denial of attorneys' fees was proper because the EAJA is wholly inapplicable to condemnation proceedings. Essentially, the government makes a two-pronged argument. First, the government asserts that a landowner cannot have the requisite "prevailing party" status under the EAJA. Second, it urges that the Act's saving clause precludes fee awards in condemnation cases.

These same arguments have been considered and rejected by the Fifth Circuit, sitting en banc,[3] and the Eighth[4] and Ninth Circuit.[5] Having examined the statute and reviewed the legislative history ourselves, we agree generally with our sister circuits' conclusions.

### A.

Under the EAJA, only a "prevailing party" in a "civil action brought by or against the United States" is entitled to a fee award.[6] Both parties agree that a condemnation proceeding is a "civil action." The government asserts, however, that because of the nature of a condemnation proceeding, the landowner can never be a "prevailing party." Alternatively, the government argues that even if, theoretically, a landowner could be a "prevailing party," appellants are not prevailing parties under the facts of this case.

#### 1.

The government's arguments in support of its sweeping position that landowners under any circumstances can never satisfy the EAJA's "prevailing party" requirement

---

**3.** *United States v. 329.73 Acres of Land,* 704 F.2d 800 (5th Cir.1983) (en banc).

**4.** *United States v. 341.45 Acres of Land,* 751 F.2d 924 (8th Cir.1984).

**5.** *United States v. 101.80 Acres of Land,* 716 F.2d 714 (9th Cir.1983).

**6.** 28 U.S.C. § 2412(d)(1)(A) (1982).

can be summarized as follows: in a condemnation case, the government seeks to obtain land for just compensation; therefore, regardless of any discrepancy between the value of the land asserted by the government and the value judicially determined, the government gets what it requested in any case in which the validity of the taking is upheld—the land in exchange for just compensation; hence, the government must be considered the prevailing party.

The government's position is unacceptable for the simple reason that in the instant case, as is true in practically all condemnation cases, the validity of the taking is uncontested and the *only* issue is the amount of compensation to be awarded. A private citizen need not prevail on every issue in a case to be entitled to a fee award; rather, a party may recover fees for those significant issues on which it succeeds.[7] It is apparent that the government's position rests on the premise that an unwritten exception to the EAJA excludes attorney fee awards in condemnation cases. Neither the language of the Act nor its legislative history supports such a position.

The statute provides that fees shall be awarded in a non-tort civil action. This language is plainly broad enough to include condemnation cases. This language controls unless the legislative history makes some contrary intent clear.[8] We agree with the Fifth, Eighth and Ninth Circuits that the legislative history only buttresses the conclusion that in enacting the broad language "civil action," Congress intended to include condemnation cases. Nowhere does the legislative history indicate that the EAJA's deterrent effect was any less needed in condemnation cases than in other types of cases. Indeed, numerous witnesses testifying before congressional commit-

tees, including representatives of the Justice Department, stated or implied that the EAJA would apply to condemnation cases.[9] As the Ninth Circuit remarked,

> Significantly, none of the legislators hearing this testimony contradicted these witnesses by telling them on the record that a landowner could not be a prevailing party under section 2412 as amended.
>
> It is also significant that the reports accompanying the various bills culminating in the Act specifically mention tort cases as excluded from the Act yet never refer to condemnation cases as excluded from the Act.[10]

Thus, the statutory language is sufficiently clear and broad to include condemnation cases, and the legislative history supports this conclusion.

Despite the conclusion suggested by these tools of statutory construction, the government argues that application of the "substantial re-enactment" doctrine indicates that landowners cannot be "prevailing parties" under the EAJA. This doctrine provides that where the pre-amendment words of an amended section of a statute reappear in the amended version of the statute, the words ordinarily shall continue to be construed in the amended version as they were construed in the pre-amendment version.[11] The government's reliance on the "substantial re-enactment" doctrine is premised on the fact that before 28 U.S.C. § 2412 was amended by the EAJA, it permitted an award of costs, but not fees or expenses, in government suits. Under this prior version of § 2412, the government asserts that courts uniformly considered the government the only possible prevailing party in a condemnation proceeding. Thus, the government contends that the substantial re-enactment doctrine

---

7. *Matthews v. United States,* 713 F.2d 677, 683–684 (11th Cir.1983).

8. *Scarborough v. OPM,* 723 F.2d 801, 812 (11th Cir.1984).

9. A detailed listing of this testimony is contained in *101.80 Acres, supra,* 716 F.2d at 720 & n. 10.

10. 716 F.2d at 721 (citations omitted).

11. 1A C.D. Sands, *Sutherland Statutes and Statutory Construction,* § 22.33 at 191–92 (4th ed. 1972).

requires courts to interpret amended § 2412 in the same manner.

█ We reject the government's attempt to apply the "substantial re-enactment" doctrine under the circumstances of this case. While former § 2412 may not have contemplated landowners in condemnation cases, the legislative history, as discussed above, reveals that Congress understood the EAJA to permit fee awards in condemnation cases. Thus, Congress employed the same language, but it is clear that a different meaning was to attach.[12] Indeed, it seems likely that Congress had other fee shifting statutes in mind, not prior § 2412, when it enacted the EAJA[13]; the "prevailing party" language is not unique to the EAJA, and courts have looked to other fee shifting statutes, rather than the prior version of § 2412, for guidance in construing the EAJA.[14] In any event, the prior construction was neither widespread nor long-standing, which weakens any inference that Congress knew of those prior interpretations of § 2412 when it enacted the EAJA.[15] Thus, we reject the government's reliance on the substantial re-enactment doctrine and hold that, under proper circumstances, a landowner in a condemnation case may be a prevailing party for purposes of the EAJA.

### 2.

█ The government next argues that even if it is possible for a landowner to be a "prevailing party" in a condemnation case, under the facts of this case appellants are not "prevailing parties." Because in a straight condemnation case the date of valuation is the date the award is made, the government argues that a court should determine "prevailing party" status by comparing the value urged by each party at trial to the value ultimately awarded. In the instant case, the government maintained that the per acre value of the land was $400, while the appellants offered testimony ranging from $700 to $1,000. Because the actual award of $575 was closer to the government's position, the government contends that it was the "prevailing party."

We reject such a simplistic approach. In *Hensley v. Eckerhart*,[16] the Supreme Court stated: "A typical formulation is that 'plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' "

The most simplistic explanation of whether a party prevails or not is to ask whether he won or lost. While not adopting a standard so simply stated, the Eighth Circuit had the following to say:

> [I]f property owners who recover more than the government offers as just compensation in condemnation cases are not considered prevailing parties for purposes of § 2412(d), the EAJA would essentially have no effect in condemnation actions. Unless property owners who win more money as just compensation can be prevailing parties, the only property owners who could qualify for pre-

---

**12.** *See 101.80 Acres, supra,* 716 F.2d at 723 n. 13.

**13.** In discussing the "prevailing party" requirement, a House Report stated that "[i]t is the committee's intention that the interpretation of the term in S. 265 be consistent with the law that has developed under existing [fee shifting] statutes." H.R.Rep. No. 1418, 96th Cong., 2d Sess. 11 (1980), *reprinted in* 1980 U.S.Code Cong. & Ad.News 4953, 4990.

**14.** *E.g., National Treasury Employees Union v. IRS,* 735 F.2d 1277, 1279 (11th Cir.1984) (referring to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988).

**15.** *101.80 Acres, supra,* 716 F.2d at 723 n. 13.

**16.** 461 U.S. 424, 433–34, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40, 46 (1983) *quoting Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978). Although the *Hensley* case involved an action for attorneys' fees under the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988, the Court stated that "[t]he standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" 103 S.Ct. at 1939 n. 7. *See also National Treasury Employees Union v. IRS,* (looking to § 1988 cases for guidance in determining "prevailing party" status under the EAJA); 735 F.2d at 1279.

vailing party status would be those property owners who successfully challenge the government's authority to condemn or if condemnation proceedings against their property are abandoned, which was precisely the situation that existed under 42 U.S.C. § 4654(a), *before* the enactment of the EAJA. Such a narrow interpretation of "prevailing party" precludes application of § 2412(d) to condemnation actions, contrary to Congressional intent. *United States v. 341.45 Acres of Land, supra,* 751 F.2d at 938.

For condemnation cases in this circuit we apply a test from the *Hensley* teaching: Did the landowner succeed in achieving some benefit as a consequence of litigating the valuation issue with the government? If the government's pre-litigation offer is enhanced by more than a trivial or inconsequential amount, then the landowner has prevailed. We reach this conclusion because of the very close relationship between the decisional process in determining whether a landowner was a "prevailing party" and whether the government was "substantially justified" in not settling the valuation without litigation. (*See* Part III *infra*). Since the only issue in these cases is the value of the land, a comparison of the government's pre-litigation offer to the amount awarded influences the decisional process in determining both whether the landowner "prevailed" and whether the government was "substantially justified."

In this case, the decision that the landowners prevailed is easy. The landowners were awarded 53% more than the government's pre-litigation offer, $368,000 instead of $240,000. It cannot be argued that this was an inconsequential benefit. The government loses on this issue.

### B.

■ Aside from its argument that landowners cannot be prevailing parties in con-demnation cases, the government also relies on the EAJA's saving clause in support of its contention that the Act is inapplicable to condemnation proceedings. The saving provision to the Act states:

Nothing in section 2412(d) of title 28, United States Code [subsec. (d) of this section], as added by section 204(a) of this title, alters, modifies, repeals, invalidates, or supersedes any other provision of Federal law which authorizes an award of such fees and other expenses to any party other than the United States that prevails in any civil action brought by or against the United States.[17]

Because existing law provides automatically for the award of attorney fees to a condemnee in certain limited situations (such as where the government is unable to condemn the property or abandons the proceeding),[18] the government argues that, in view of the saving clause, existing statutory authority limits a landowner's recovery in condemnation cases. Interpreting the EAJA to permit fee awards in condemnation cases other than those contemplated by existing law, the government argues, would "modify" or "supersede" that provision in contravention of the saving clause. We reject this argument, however, and agree with the Fifth Circuit that "the Act ... *supplements* and does not impermissibly replace or supersede, the pre-existing award provision of 42 U.S.C. § 4654, for award of landowner litigation expenses in the limited situations where the United States cannot acquire or chooses to abandon the land."[19] Therefore, the saving clause does not preclude the EAJA from applying to a condemnation proceeding such as the one involved here.

### C.

■ While the conclusions we have reached thus far are our own, the Fifth, Eighth and Ninth Circuit decisions have been instructive. The government argues

---

**17.** Pub.L. No. 96–481, § 206, 94 Stat. 2321, 2330 (codified at 28 U.S.C. § 2412 note (Supp.1980)).

**18.** 42 U.S.C. § 4654(a). This provision is discussed at Part C, *infra.*

**19.** *329.73 Acres, supra,* 704 F.2d at 807.

that we should not be persuaded by those Circuit decisions because those cases involved condemnation under the Declaration of Taking Act, 40 U.S.C. § 258a, while the instant case is a "straight" condemnation under § 257. As already noted, a § 257 proceeding differs from a § 258a proceeding in that the government deposits no funds until after just compensation is determined and can dismiss the case at any time until payment is made, including after the amount of compensation is fixed.[20] The United States, however, cannot dismiss the complaint with impunity. Even before Congress enacted the EAJA, courts were required to award "reasonable attorney . . . fees, actually incurred because of the condemnation proceeding, if—. . . (2) the proceeding is abandoned by the United States." [21] Thus, with respect to § 257 straight condemnation cases, the EAJA would come into play only in those instances where, as here, the amount of just compensation is in dispute *and* the government exercises its option to purchase the property for the adjudicated amount. This scenario is effectively the same as the Fifth and Ninth Circuit § 258a cases: in either instance, the government acquires the land for an amount of money greater than it offered to the condemnee, and the condemnee is forced to incur attorneys' fees to achieve that result. Therefore, we extend the Fifth and Ninth Circuits' reasoning and hold that the EAJA is applicable in § 257 straight condemnation proceedings.[22]

### III.

The most difficult part of the EAJA, as it pertains to eminent domain cases, is the "substantially justified" aspect. The statute provides:

Except as otherwise specifically provided by statute, a court *shall* award to a *prevailing party* other than the United States fees and other expenses, in addition to any costs awarded pursuant to

subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was *substantially justified* or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphasis added).

The best place to start in considering this part of the statute is the Congressional history:

Under S. 265, fees will be awarded unless the Government can show that its action was substantially justified or that special circumstances make an award unjust. This standard balances the constitutional obligation of the executive branch to see that the laws are faithfully executed against the public interest in encouraging parties to vindicate their rights. Unlike the dual standards under the Civil Rights Acts developed in *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400 [88 S.Ct. 964, 19 L.Ed.2d 1263] (1968) (prevailing plaintiffs should ordinarily recover their attorney's fees unless special circumstances would render an award unjust) and in *Christiansburg Garment Co. v. Equal Employment Opportunity Commission,* 434 U.S. 412, 421 [98 S.Ct. 694, 700, 54 L.Ed.2d 648] (1978) (prevailing defendants should recover fees only upon a finding that a plaintiff's action was frivolous, unreasonable or without foundation), the standard in S. 265 is tailored to cover both prevailing plaintiffs and prevailing defendants in general litigation against the Government.

The test of whether or not a Government action is substantially justified is essentially one of reasonableness. Where the Government can show that its case had a reasonable basis both in law

---

**20.** *See* Part I.A., *supra.*

**21.** 42 U.S.C. § 4654(a).

**22.** The differences between § 257 and § 258(a) procedures, however, may produce different results. For example, the timing of valuation may affect prevailing party status. *See* Part II.A.2, *supra.*

and fact, no award will be made. In this regard, the strong deterrents to contesting Government action require that the burden of proof rest with the Government. This allocation of the burden, in fact, reflects a general tendency to place the burden of proof on the party who has readier access to and knowledge of the facts in question. The committee believes that it is far easier for the Government, which has control of the evidence, to prove the reasonableness of its action than it is for a private party to marshal the facts to prove that the Government was unreasonable.

Certain types of case dispositions may indicate that the Government action was not substantially justified. A court should look closely at cases, for example, where there has been a judgment on the pleadings or where there is a directed verdict or where a prior suit on the same claim had been dismissed. Such cases clearly raise the possibility that the Government was unreasonable in pursuing the litigation.

The standard, however, should not be read to raise a presumption that the Government position was not substantially justified, simply because it lost the case. Nor, in fact, does the standard require the Government to establish that its decision to litigate was based on a substantial probability of prevailing. Furthermore, the Government should not be held liable where 'special circumstances would make an award unjust.' This 'safety valve' helps to insure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts. It also gives the court discretion to deny awards where equitable considerations dictate an award should not be made.

H.R.Rep. No. 1418 at 10, U.S.Code Cong. & Ad.News, Pg. 4989–90 (1980).

Since the district court ruled that the EAJA did not apply to land condemnation cases it is necessary for us to remand the case for that court to take evidence and give the government an opportunity to establish that its position was substantially justified.

█ The "substantially justified" standard is a difficult and flexible one. Its application in condemnation cases[23] requires a determination of whether the government should have made greater efforts to settle the case before deciding to litigate. In any case where the only issue is the dollar amount of damages, a certain amount of crystal ball gazing is required, coupled with an honest evaluation of the strengths and weaknesses of one's case. The EAJA requires the government to make such an evaluation, ignoring the advantages inherent in its position of unlimited financial resources and its capacity for intransigence.

█ In applying the reasonableness standard the district court should explore what offers were made by the government to the landowners prior to trial, whether the price per acre offered was comparable to other awards being made on similar tracts in the area at that time, whether the government's appraisal of the land which formed the basis of its offer was by a neutral and impartial expert appraiser or one regularly employed by the government, whether the appraisal was based on sound comparables, and such other facts that may be presented by the parties which will illuminate the issue of the good faith of the government in trying to reconcile the dispute prior to subjecting the landowners to litigation.

---

**23.** Our circuit has discussed the "substantially justified" requirement in other contexts, which are not helpful in condemnation cases. *See Matthews v. United States,* 713 F.2d 677 (11th Cir.1983); *Martin v. Heckler,* 733 F.2d 1499 (11th Cir.1984) (vacated by order of court granting rehearing en banc, 733 F.2d 1502); *Ashburn*

*v. United States,* 740 F.2d 843 (11th Cir.1984). The Eighth Circuit in *341.45 Acres, supra,* 751 F.2d at 940–41 concludes that the government is substantially justified if its offer is based upon and consistent with its expert witnesses' appraisals and the government was not guilty of abusive conduct.

## IV.

Finally, the government argues that because the district court entered judgment on May 29, 1981, this case was not "pending" on October 1, 1981, as is required by EAJA, and, therefore, the Act is inapplicable. The very nature of a straight condemnation proceeding, however, belies the government's position. "[T]he United States may dismiss a [straight] condemnation suit at any time before 'compensation has been determined *and paid* ....' "[24] In the instant case, the government did not deposit any funds in the court's registry until March 10, 1982. Thus, for purposes of the EAJA, this case was pending as of October 1, 1981.

## V.

The district court's determination that appellants were not prevailing parties is reversed. The case is remanded for the district court's determination of whether the United States' position was substantially justified within the meaning of the EAJA.

REVERSED and REMANDED.

JOHNSON, Circuit Judge, dissenting:

While I share the majority's view that the Equal Access to Justice Act is applicable to condemnation proceedings, I must dissent from its conclusion that the landowner is entitled to attorney's fees in this case as the "prevailing party." Because there seems to be no doubt that the government has "prevailed" when it takes title to a piece of land following a "straight" condemnation proceeding, I find it impossible to concur in an award of attorney's fees to the landowner.

Although the majority observes that this is a "straight" condemnation proceeding, both its analysis and those cases on which it relies are based on the expedited condemnation proceeding which is available under 40 U.S.C.A. § 258a. In a Section 258a proceeding, the government obtains title to the land immediately upon filing a declaration

of taking and depositing with the clerk of the district court an amount representing its estimate of just compensation. The landowner may accept this amount, thus ending the case, or he may litigate for a higher rate of compensation. If the amount ultimately awarded is greater than the initial deposit, the government pays the difference, plus interest from the date of deposit. But the title, in such a proceeding, has already been transferred to the government; only the issue of just compensation remains to be litigated. In a Section 258a proceeding, the majority's theory that the landowner "prevails" if he receives more money than the government deposited is plausible. But this is not the type of case we have before us today.

In a "straight" condemnation under 40 U.S.C.A. § 257, the government files a complaint in condemnation, but neither takes title to the land nor deposits any money with the district court. The complaint informs the landowner of the government's desire to take title to the land, and requests the court to make a determination of the just rate of compensation for the land. In some cases the court may determine that the land is not subject to condemnation; in most cases it simply determines the appropriate compensation. Until the actual taking of the property, the government may discontinue or abandon the proceeding since determination of the award is an offer subject to acceptance by the government, giving the government the opportunity to determine whether the valuation makes the cost of the public project financially feasible. A Section 257 condemnation proceeding is merely a means by which the sovereign may find out what a piece of property will cost. *Danforth v. United States,* 308 U.S. 271, 60 S.Ct. 231, 84 L.Ed. 240 (1939); *United States v. 2,175.68 Acres of Land,* 696 F.2d 351, 355 (5th Cir.1983). *See also Albrecht v. United States,* 329 U.S. 599, 602–03, 67 S.Ct. 606, 608, 91 L.Ed. 532 (1947).

The "straight" condemnation proceeding is thus completely different from a pro-

---

**24.** *Kirby Forest, supra* note 2, at 2195 (quoting    Fed.R.Civ.P. 71A(i) (emphasis supplied)).

ceeding under 40 U.S.C.A. § 258a. A straight condemnation (Section 257) proceeding is sought not to dispute a price submitted by the government, but to establish the proper price. It is not conducted after the transfer of title; it provides the predicate for the transfer of title. If the price arrived at by the court is more than the government is willing to pay, it may abandon the condemnation proceeding and allow the landowner to keep the land.

To me this clearly demonstrates that when the government takes title following a "straight" condemnation proceeding, it has "prevailed" in every sense of the word. It has taken title to the land that it initially sought, and it has received the calculation of just compensation that it initially requested. As the government's complaint in a "straight" condemnation neither establishes nor accompanies the deposit of a price for the land, the fact that the government might have preferred a lower price— or might have offered one to the landowner prior to commencing the condemnation proceeding—has no relevance to the outcome of the proceeding. The landowner who has received a higher rate of compensation than the government might have preferred has not prevented the government from achieving either of its objectives in filing the action.

This interpretation of "prevailing party" is, moreover, the only one which is consistent with 42 U.S.C.A. § 4654, the pre-existing statute governing the award of attorney's fees in "straight" condemnation cases. That provision states that a landowner may recover costs and litigation expenses, including attorney's fees, in condemnation cases in which the government's power to take the land is denied or in which the government abandons the condemnation proceeding. The majority contests the charge of inconsistency, stating that its interpretation of "prevailing party" under the EAJA only "supplements" the awards available under Section 4654. But there is no doubt that the majority's position is inconsistent insofar as it alters the congressional judgment implicit in Section 4654 as to when a landowner may be said to have prevailed in a "straight" condemnation proceeding. *See United States v. 329.73 Acres, Grenada and Yalobusha Ctys,* 704 F.2d 800, 816 (5th Cir.1983) (Rubin, J., dissenting). Such interference with the pre-existing statutory scheme, which is proscribed by the "saving" and "exceptions" clauses of the EAJA, 28 U.S.C.A. § 2412(d)(1)(A), can be avoided by the recognition that, when the government takes title to land following a "straight" condemnation proceeding, it "prevails" under the EAJA as well as under Section 4654.