**Lucien LOUIS, et al., Plaintiffs,**

v.

**Alan NELSON, et al., Defendants.**

**No. 81–1260–CIV.**

United States District Court,
S.D. Florida,
Miami Division.

Dec. 6, 1985.

Ira Kurzban, Miami, Fla., for plaintiffs.

Patricia Kenny, Asst. U.S. Atty., Miami, Fla., for defendants.

**MEMORANDUM OPINION AND ORDER CONCERNING PLAINTIFFS' ENTITLEMENT TO ATTORNEYS' FEES, COSTS AND EXPENSES PURSUANT TO THE EQUAL ACCESS TO JUSTICE ACT**

SPELLMAN, District Judge.

THIS CAUSE came before the Court on the plaintiffs' Motion for Attorneys' Fees, Costs, and Expenses under the Equal Access to Justice Act. For the reasons detailed below, this Court finds that the plaintiffs are entitled to an award of attorneys' fees, costs, and expenses allocable to their efforts in litigating their claims before this Court and the United States Court of Appeals for the Eleventh Circuit. By separate Order, this Court shall schedule a hearing to determine the amount that shall be awarded.

The Equal Access to Justice Act ("EAJA") provides that:

a court shall award to a prevailing party ... fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

Thus, in order to grant an award of attorneys' fees, this Court must find that the plaintiffs were the prevailing parties within the meaning of the Act, that the government's position was not substantially justified and that there are no other special circumstances that would make an award unjust. All of the requirements for an award of attorneys' fees have been met here.

## THE PLAINTIFFS WERE THE 'PREVAILING PARTIES'

The Supreme Court has observed that "plaintiffs may be considered 'prevailing parties' for attorneys' fees purposes if they succeed on any significant issue in the litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhardt*, 461 U.S. 424, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir.1978)). There can be no doubt in this case that the plaintiffs succeeded on a significant issue.

This case began in response to implementation by the INS of a new policy of accelerated exclusion proceedings and detention without parole of all Haitian refugees.[1] In essence, the litigation had two primary goals. First, the plaintiffs sought to stop the mass exclusion hearings which were being held without counsel.[2] And second, plaintiffs sought to obtain the release from detention of class members pending the determination of their political asylum applications, thereby restoring to full force and effect the prior policy of parole pending individual exclusion proceedings.[3]

---

1. The background to this litigation is discussed in this Court's opinion, *Louis v. Nelson*, 544 F.Supp. 973, 978-81 (S.D.Fla.1982), and in the Eleventh Circuit's panel opinion, *Jean v. Nelson*, 711 F.2d 1455, 1464-74 (11th Cir.1983).

2. Indeed, shortly after this case was filed the government conceded that the exclusion orders entered at such hearings were invalid and therefore said orders were vacated. Thus, plaintiffs were the prevailing party on this aspect of the litigation and, in light of the government's action, its position was not substantially justified.

3. The complaint, filed on June 16, 1981, asserted seven causes of action. Count I challenged the commencement of preliminary interviews for Haitian refugees without the presence of counsel or notice of the right to counsel; Count II challenged the legality of the new detention

policy, which was not promulgated pursuant to the rule-making requirements of the APA; Count III challenged the failure to advise class members of their procedural rights at exclusion hearings; Count IV challenged the denial of access to counsel; Count V challenged the denial of public exclusion hearings; Count VI challenged the denial of the right to apply for political asylum; and Count VII challenged the lawfulness of the new Haitian program in its entirety under the equal protection clause. In a Memorandum Opinion and Order dated February 24, 1982, this Court dismissed Counts I, III, V, and VI in their entirety and Counts IV and VII in part. It retained jurisdiction over Count II, Count IV insofar as it alleged that Haitians in detention had first amendment rights of access to counsel and that the Haitian Refugee Center had a claim of access to those persons in deten-

After a lengthy trial, this Court held that the new detention policy was adopted in violation of the Administrative Procedure Act ("APA") and that plaintiffs' continued incarceration pursuant to this policy was unlawful. *Louis v. Nelson,* 544 F.Supp. 973, 993–97 (S.D.Fla.1982). Ten days later, this Court declared the new detention policy "null and void", and ordered the release of class members "forthwith" pursuant to a carefully drafted release plan. *Louis v. Nelson,* 544 F.Supp. 1004, 1006–07 (S.D. Fla.1982). Thus, the plaintiffs effectively obtained both of the goals they set out to achieve. As a direct result of this litigation, the defendants stopped the accelerated mass exclusion hearings and class members were released from indefinite incarceration.[4] These results were affirmed by the Eleventh Circuit panel. *See Jean v. Nelson,* 711 F.2d 1455, 1510 n. 63 (11th Cir.1983). The *en banc* court dismissed the defendant's appeal of this Court's decision on the APA issue, thus leaving the results plaintiffs obtained undisturbed. *See Jean v. Nelson,* 727 F.2d 957, 962 (11th Cir.1984), *aff'd in part,* — U.S. —, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985).[5]

The fact that plaintiffs did not "prevail" on their claim that the new policy violated their fifth amendment rights to equal protection does not mean that they cannot be considered "prevailing parties" for attorneys' fees purposes. Plaintiffs need not prevail on every issue to be considered a prevailing party. For purposes of attorneys' fees, "[t]he result is what matters." *Hensley,* 103 S.Ct. at 1940. Plaintiffs merely pursued alternative litigation theories in attacking the INS' new detention policy.[6]

## THE GOVERNMENT'S POSITION ON THE APA ISSUE WAS NOT SUBSTANTIALLY JUSTIFIED

The government has the burden of proving that its position "had a reasonable basis both in law and fact." H.R.Rep. No. 1418, 96th Cong., 2d Sess. 10, U.S.Code Cong. & Admin.News 1980, pp. 4953, 4989; S.Rep. No. 253, 96th Cong., 1st Sess. 6 (1979). The Eleventh Circuit has emphasized that the legislative history of the Equal Access to Justice Act requires "the government to make a *strong showing* to demonstrate that its action was reasonable." *S. & H. Riggers & Erectors, Inc. v. O.S.H.R.C.,* 672 F.2d 426, 430 (5th Cir.1982) (citations omitted) (emphasis supplied by the court). *See also Environmental Defense Fund, Inc. v. Watt,* 722 F.2d 1081,

---

tion; and Count VII insofar as it alleged that the detention policy was applied in a discriminatory fashion. *Louis v. Meissner,* 532 F.Supp. 881 (S.D.Fla.1982).

4. The relief obtained by the plaintiffs mooted many of the issues raised in the complaint. Plaintiffs were released from detention and indirectly obtained counsel or notice of the right to counsel, thereby ensuring that class members would have notice of their procedural rights at exclusion hearings (Count III), including the right to apply for political asylum (Count VI). As a result of this lawsuit, defendants stopped their practice of preventing lawyers from contacting Haitians at closed exclusion hearings (Count I). With the release of class members, plaintiffs have had access to counsel and counsel have had access to class members (Count IV). Also as a direct result of this litigation, the INS promulgated new parole regulations which are facially neutral and which require parole decisions to be made without regard to race or nationality. *See* 8 CFR § 212.5 (1985).

5. The Eleventh Circuit panel that originally heard this matter found that the defendants discriminated against the plaintiff class in the enforcement of the new detention policy and that plaintiffs were therefore denied equal protection. *Jean v. Nelson,* 711 F.2d at 1509. The Eleventh Circuit, sitting *en banc,* however, held that excludable aliens have no constitutional rights with respect to their applications for admission, asylum, or parole. *Jean v. Nelson,* 727 F.2d 957 (11th Cir.1984) (en banc). The Supreme Court held that the *en banc* court should not have reached the constitutional issue because under the statutes and regulations now in effect, parole decisions must be made without regard to race or national origin. *Jean v. Nelson,* 105 S.Ct. at 2998.

6. This Court was well aware that after it found that the new policy was violative of the APA that "[t]echnically ... [it] need not go further in order to resolve plaintiffs' other claims for relief." *Louis,* 544 F.Supp. at 997. However, the Court chose to review the equal protection claim in the interests of "judicial economy and fairness." *Id.* at 997–98.

1085 (2d Cir.1983). The government has not and, indeed, cannot make the requisite showing here.

On August 5, 1985, the Equal Access to Justice Act was amended with regard to the "position of the United States" when determining substantial justification. Under the amendment, which applies to pending cases, the government must not only show substantial justification with regard to its litigating position, but also "the action or failure to act by the agency upon which the civil action is based." Pub.L. No. 99–80, ¶ 2(c)(2)(d). Under the facts of this case, the distinction makes little difference. *See Ashburn v. United States,* 740 F.2d 843, 846 n. 1 (11th Cir.1984) (noting that in a typical case there is no real difference between action of agency and litigation position). The INS made a determination that its new detention policy did not have to comply with the rulemaking requirements of the Administrative Procedure Act. When this was challenged in Court, attorneys from the United States Attorney's Office and the Department of Justice argued that the INS was correct. The position taken by the INS and the position taken by the government attorneys in defending the INS' actions were essentially the same. And these positions were unreasonable.

■ The INS was well aware prior to this litigation that the courts in this jurisdiction had consistently rejected INS' claim that the APA did not apply to changes of substantive policy regarding Haitian refugees. *National Council of Churches v. Egan,* No. 79–2959–Civ–HOEVELER, Slip. op. at 3 (S.D.Fla. Aug. 3, 1979) (preliminary injunction entered, not appealed); *Sannon v. United States* 460 F.Supp. 458, 466–67 (S.D.Fla.1978), *remanded to be vacated as moot,* 566 F.2d 104 (S.D.Fla.1978).

Indeed as early as March 20, 1981, the INS Acting General Counsel wrote a memorandum summarizing the legal requirements applicable to the defendants' detention policy and mass exclusion hearings. Citing the *Sannon* case as authority, he advised the INS that "[a]ny change in reg-

ulations which takes rights or privileges away from aliens will most likely require a 60-day notice and comment period, and a 30-day delayed effective date ..." Legal Memorandum by INS Acting General Counsel Paul Schmidt, Px94. But even though the INS was apparently aware that it needed to comply with the APA, the defendants intentionally refused to do so. As this Court found:

> They admitted to the Court that they made a conscious decision not to promulgate a rule pursuant to the Administrative Procedure Act. The evidence shows that they never seriously undertook the difficult task of drafting a set of guidelines concerning which aliens would be placed in detention. Instead, INS issued general instructions to its field officers to start detaining excludable aliens who do not establish a prima facie claim for admission.

*Louis v. Nelson,* 544 F.Supp. at 981.

In light of prior precedent and the advice of counsel, INS' refusal to comply with the APA was not reasonable; nor was the position of the United States Attorney's Office in defending these actions by claiming that the change in policy was not a rule subject to the rulemaking requirements of the APA. This Court rejected the government's claims in its opinion, finding that the change in policy was "clearly" a rule subject to the rulemaking requirements of the APA. *Louis v. Nelson,* 544 F.Supp. at 997. The Eleventh Circuit found that defendants were not likely to succeed on this issue and denied their request for a stay. *Jean v. Nelson,* 683 F.2d 1311, 1312 (11th Cir.1982). After hearing the case, the Eleventh Circuit panel completely rejected the government's arguments that the new policy was not a rule to which the APA rulemaking requirements applied and affirmed the decision of this Court. *Jean v. Nelson,* 711 F.2d at 1483.

■ The government's factual position in this litigation was also without merit. The defendants repeatedly denied that there was a new detention policy for Haitians, claiming that the district directors still

had complete discretionary authority to parole individuals or, alternatively, that the directors were merely enforcing the statute. *See also Jean v. Nelson*, 711 F.2d at 1469–70 (discussing conflicting testimony at trial by Administration officials as to whether there was a policy change). It was only well into the litigation that the defendants admitted what had been obvious—that there was a detention policy and that they had instituted this policy without complying with rulemaking procedures. Since the plaintiffs had consistently maintained that there was a detention policy, the defendants' unreasonable factual position unnecessarily prolonged the litigation of this matter.

■ Finally, the defendants have not demonstrated any special circumstances which would make an award unjust. Indeed, considering the extraordinary efforts of plaintiffs' counsel and the excellent results they achieved, it would be unjust to deny an award of attorneys' fees.

## THE PROPER STANDARD

■ The issue of attorneys' fees in this case is complicated, however, by the fact that the government's legal position—that the INS' actions did not violate the equal protection guarantee of the fifth amendment—must be considered reasonable in light of the fact that the Eleventh Circuit, sitting *en banc*, actually agreed with the government on this point. Even though the Supreme Court found that the circuit court should not have reached the constitutional issue, the government was certainly "justified" for EAJA purposes in defending against the claim that the INS' actions violated the equal protection guarantee.

In *Hensley*, the Supreme Court emphasized that counsel should not be penalized for pursuing, in good faith, alternative claims for relief.[7] Although the Court observed in a footnote that the standard it set forth is "generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party,'" 103. S.Ct. at 1939 n. 7, this Court is of the opinion that these principles must be modified to some degree for fee awards under the Equal Access to Justice Act. Unlike the Civil Rights Attorney's Fees Awards Act, which allows prevailing parties in suits brought under specified civil rights statutes to recover "a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988, the Equal Access to Justice Act mandates the award of attorneys' fees *unless* "the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). Thus, under the Equal Access to Justice Act, a prevailing party in a suit against the government cannot be awarded fees when the government's position was reasonable.

In *Matthews v. United States*, 713 F.2d 677 (11th Cir.1983), the Eleventh Circuit articulated the standard to be used in an Equal Access to Justice Act claim when a plaintiff prevails in some but not all its claims against the United States. Adopting the approach of the Third Circuit in *Goldhaber v. Foley*, 698 F.2d 193, 197 (3d Cir.1983), the Court noted that neither the

---

**7.** According to the Court:

In [certain] cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

Where a plaintiff has obtained excellent results, his attorney should recover a fully com-

pensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not sufficient reason for reducing a fee. The result is what matters.

*Hensley v. Eckerhart*, 103 S.Ct. at 1940 (citation and footnote omitted).

terms of the Act nor its legislative history addressed this situation. It therefore began its analysis by looking to the underlying purpose of the Equal Access to Justice Act. If found:

> The governing principle of the Act is that the "United States should pay those expenses which are incurred when the government presses unreasonable positions during litigation." The central purpose of the Act is "to eliminate any barrier to litigation challenging unreasonable government conduct presented by the specter of attorney's fees.... Because the Equal Access to Justice Act contemplates deterring only unreasonable positions," it would contravene the purposes of the Act to require the government to bear the expense of defending even its reasonable positions. Following the Third Circuit, we adopt the position "that the United States is only responsible for that portion of the expenses attributable to its unjustified positions."

713 F.2d at 683–684 (citations omitted).

Thus, when reviewing a claim for attorneys' fees under the EAJA, the Court must take into account not only the results obtained but also the reasonableness of the government's positions on each of the disputed claims. As discussed above, the Court finds that the government was not substantially justified in its position on the APA claim. By prevailing on this claim, the plaintiffs obtained virtually all the relief they requested, a factor that should weigh heavily in the determination of the fee award. On the other hand, because the government did not act unreasonably in defending against the claim that the INS' actions violated the equal protection guarantee of the fifth amendment, any fee award must also be reduced accordingly.

The Supreme Court observed in *Hensley* that when a lawsuit involves a "common core of facts" or "related legal theories" as this case did, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide hours expended on a claim by claim basis." 103 S.Ct. at 1940. This observation is particularly apt here. Determining the amount of time spent on each claim would be particularly onerous in this case, given the interrelated nature of the facts and theories and the number of attorneys involved in the various aspects of the litigation. The Court notes that there was considerable overlap between the APA and the equal protection claim. The preliminary issues were essentially the same. For example, for both claims plaintiffs had to establish that they had standing, that this Court had subject matter jurisdiction, that they were entitled to proceed as a class, that a "final" INS order was not required, that they had exhausted administrative remedies, that the detention policy was not committed to agency discretion and that the political question doctrine did not apply.

Even at trial, the presentation of the equal protection issue overlapped to some degree with the APA claim. Defendants argued that there had not been a change in detention policy and that INS officials continued to have the same discretion to grant parole. Plaintiffs' Exhibit 1, for example, was offered to prove both that the defendants had a policy and that this policy discriminated against Haitians.

This Court does not think it is appropriate to further protract the matter by attempting to identify which specific hours and expenses should be eliminated from a fee award because they are attributable to the equal protection claim and not the APA claim. Rather, one of the factors the Court will consider in determining the ultimate fee award in this case is that the government was not unreasonable in defending against the equal protection claim. Any award will be adjusted downward accordingly. The Court is of the opinion that the percentage of total attorney time that should be attributed to each claim can be approximated.

The Court will conduct a hearing to determine the total number of hours that can be considered "reasonably expended" on the litigation and a reasonable hourly rate for the attorneys involved. In addition to the downward adjustment discussed above,

the Court will consider whether the fees should be enhanced for any reason pursuant to 28 U.S.C. 2412(d)(2), including the excellent results achieved by plaintiffs' counsel, the limited availability of qualified counsel for this kind of litigation, and the delay in payment of this award.[8]

---

**8.** Because the litigation before the Supreme Court concerned only the equal protection claim, the plaintiffs are not entitled to compensation under the EAJA for their efforts in that Court. However, the plaintiffs have pointed out that the government apparently changed its litigation position as the case progressed. Before the Supreme Court, the government argued that the INS was precluded by statute and regulations from making nationality-based distinctions. Based upon this representation, the Court found that it was unnecessary to reach the constitutional issues. At trial, however, the government argued to the contrary—that nationality can be a factor in determining whether an alien is paroled.

This Court recognizes that if the government had taken the position it now takes during the trial, the constitutional claims may not have needed to be litigated. The Court will therefore consider the government's apparent change in position in adjusting the final fee award.